UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ALISON McCORMICK, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil No. 09-365-P-S |
| | ) | |
| FESTIVA DEVELOPMENT GROUP, | ) | |
| LLC, et al., | ) | |
| | ) | |
| Defendants | ) | |

MEMORANDUM DECISION ON PLAINTIFFS' MOTION TO AMEND
AND RECOMMENDED DECISION ON DEFENDANTS' MOTIONS TO DISMISS

Defendant Rangeley Lake Development Group, LLC ("Rangeley") seeks dismissal pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) of the instant suit, in which the plaintiffs seek overtime pay and minimum wages allegedly due under both the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and Maine's employment practices law, 26 M.R.S.A. § 670. *See* Defendant Rangeley Lake Development Group, LLC's Motion To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6) ("Rangeley Motion") (Docket No. 7) at 1-2; First Amended Complaint, Exh. A to Objection to Plaintiffs' Motion to Remand ("Remand Objection") (Docket No. 8), at 1-2.[1]  In addition, defendant Festiva Development Group, LLC ("Festiva") seeks dismissal of the plaintiff's state-law claims pursuant to Rule 12(b)(6).  *See* Defendant Festiva's Motion To Dismiss ("Festiva Motion") (Docket No. 14) at 1-2.  Finally, the plaintiffs seek to amend their complaint to plead their state-law class action claim with more

---

[1] The plaintiffs filed a First Amended Complaint in the Maine Superior Court prior to Rangeley's removal of the case to this court.  *See* Remand Objection at 4.  Rangeley did not file a copy of that pleading with its notice of removal because it was not then available from state court.  *See id*. at 4-5.  To correct that technical deficiency, Rangeley filed the First Amended Complaint as an attachment to its Remand Objection.  *See id*. & Exh. A thereto.  I construe the motions to dismiss as addressing the First Amended Complaint, the operative complaint at the time of removal as well as at the time of the defendants' filing of the motions to dismiss.

specificity, to include in the case caption the names of similarly-situated employees who have opted to join the suit, and to allege, for purposes of their FLSA claim, that the defendants acted willfully.  *See* Plaintiffs' Motion for Leave To File Proposed Second Amended Complaint ("Plaintiffs' Motion") (Docket No. 41) at 1.

For the reasons that follow, I grant the plaintiffs' motion to amend and recommend that the court deny the defendants' motions to dismiss.

## I.  Motion To Amend

### A.  Applicable Legal Standards

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend should be granted in the absence of reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The First Circuit has clarified:

The appropriateness *vel non* of a district court decision denying a motion to amend on the ground of futility depends, in the first instance, on the posture of the case.  If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the "futility" label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6).  In this situation, amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory.  If, however, leave to amend is not sought until after discovery has closed and a summary judgment motion has been docketed, the proposed amendment must be not only theoretically viable but also solidly grounded in the record.  In that type of situation, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence.

*Hatch v. Department for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) (citations omitted); *see also, e.g., Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) (same).

In this case, the more liberal standard of assessing futility applies.  Rangeley removed the case from the Maine Superior Court on August 12, 2009.  *See* Docket No. 1.  Later that month, the plaintiffs filed a motion to remand, and the defendants filed their pending motions to dismiss.  *See* Docket Nos. 5, 7, 14.  No scheduling order has issued, neither defendant has answered the First Amended Complaint, and no discovery or motions deadlines have been set.  *See generally* ECF Docket.[2]

## B. Discussion

The plaintiffs filed their motion to amend well after, and partly in response to, the defendants' pending motions to dismiss.  *See* Docket Nos. 7, 14, 41.  Rangeley had moved to dismiss, *inter alia*, on grounds that the plaintiffs had failed to meet the prerequisites of a Federal Rule of Civil Procedure 23 state-law wage and hour class action or to file consents of the named plaintiffs to join the FLSA collective action.  *See* Rangeley Motion at 10-20.  The proposed Second Amended Complaint addresses those criticisms, as well as alleging for the first time that the defendants' violations of the FLSA were willful.  *See* Plaintiffs' Motion at 1, 3-4; *compare* First Amended Complaint *with* proposed Second Amended Complaint, Exh. 1 to Plaintiffs' Motion.

---

[2] On October 27, 2009, I issued an opinion recommending that the court grant the plaintiffs' motion to remand the case and that the defendants' motions to dismiss be deemed moot.  *See* Recommended Decision on Motion for Remand ("Remand Decision") (Docket No. 25) at 1.  On November 24, 2009, before the court acted on an objection by Rangeley to that recommended decision, the plaintiffs withdrew their motion to remand.  *See* Docket Nos. 26, 30. The motions to dismiss were then re-referred to me.

Rangeley objects solely on the ground that the allowance of the plaintiffs' "eleventh-hour motion to amend[,]" filed nearly five months after the defendants filed their motions to dismiss, would unduly prejudice Rangeley and delay the case. *See* Defendant Rangeley Lake Development Group, LLC's Objection to Plaintiffs' Motion for Leave To File Proposed Second Amended Complaint (Docket No. 42) at 2. Yet, Rangeley does not explain how it would be prejudiced or the case would be delayed. *See id*. It does cite a case, *De Butts v. Prince of Fundy Cruises*, 792 F. Supp. 130 (D. Me. 1992), in support of its argument. *See id*. However, as the plaintiffs observe, *see* Reply Memorandum in Support of Plaintiffs['] Motion for Leave To File Proposed Second Amended Complaint (Docket No. 46) at 1-2, *De Butts* is materially distinguishable. In *De Butts*, the plaintiff sought leave to amend her complaint after both the discovery deadline and the deadlines for designation of experts had passed, and a motion for summary judgment had been filed. *See De Butts*, 792 F. Supp. at 131. In this case, by contrast, no scheduling order has issued, and no discovery or motions deadlines have been set. Despite the delay caused by the filing and adjudication of the motion for remand and the motions to dismiss, the case is at an early stage. I perceive neither undue prejudice to Rangeley nor delay in the orderly processing of this case as a result of a grant of the motion to amend.

For its part, Festiva objects to the grant of the motion to amend solely on the ground that it is futile *at this time* and should either be dismissed without prejudice or held in abeyance until the court decides the pending motions to dismiss. *See* Defendant Festiva's Opposition to Plaintiffs' Motion for Leave To File Proposed Second Amended Complaint (Docket No. 44) at 1. This is so, in Festiva's view, because its bases for dismissal are unaffected, and uncured, by the proposed Second Amended Complaint. *See id*. at 2-3. While that is indeed so, I have concluded, for reasons discussed below, that Festiva's bases for dismissal are without merit. I have

accordingly recommended that the court deny its motion to dismiss.  Should the court agree,

amendment of the complaint would not be futile.

For those reasons, I **GRANT** the plaintiffs' motion to amend and **DIRECT** that they file

a Second Amended Complaint no later than February 18, 2010.[3]

## II.  Motions To Dismiss

### A.  Applicable Legal Standards

As the Supreme Court has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the grounds of his
> entitlement to relief requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do.  Factual allegations
> must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept as true all the

factual allegations in the complaint and construe all reasonable inferences in favor of the

plaintiffs.  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).  Ordinarily, in

weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of

the complaint, or not expressly incorporated therein, unless the motion is converted into one for

summary judgment."  *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30,

33 (1st Cir. 2001).  "There is, however, a narrow exception for documents the authenticity of

which are not disputed by the parties; for official public records; for documents central to

plaintiffs' claim; or for documents sufficiently referred to in the complaint."  *Id.* (citation and

internal quotation marks omitted).

---

[3] Should the court disagree with my recommended decision to deny Festiva's motion to dismiss, Festiva shall be
free to file a motion to dismiss the Second Amended Complaint on that basis.  I contemplate that such a motion
would be brief, merely adverting to the court's ruling as the basis for dismissal of affected portions of the complaint.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citation and internal punctuation omitted).  In distinguishing sufficient from insufficient pleadings, "a context-specific task," the court must "draw on its judicial experience and common sense." *Id*. at 1950.

### B.  Factual Background

The First Amended Complaint alleges, in relevant part:

The plaintiffs are salespeople who were employed on the premises of Rangeley and its successor, Festiva.  First Amended Complaint at 1.  They performed the task of selling time shares to customers who came into the defendants' offices.  *Id*.  They were paid on a strict commission basis, so that in several weeks they were paid less than the minimum wage during the first 40 hours of their employment and less than one and a half times their regular rate in weeks that they worked more than 40 hours.  *Id*. at 1-2.

Rangeley, a Maine corporation doing business in Portland, Maine, employed certain of the plaintiffs at all relevant times at the same location as that of Festiva.  *Id*. ¶ 2.  Festiva, a foreign corporation qualified to do business in Maine, with a place of business in Portland, Maine, employed certain of the plaintiffs at all relevant times at the same location as that of Rangeley.  *Id*. ¶ 3.

The plaintiffs' earnings were derived exclusively from sales commissions, and their hours and places of employment were substantially controlled by the defendants.  *Id*. ¶ 4.  In many weeks, the sales commissions that the defendants paid to the plaintiffs were not sufficient to compensate them at the minimum wage for the hours that they worked.  *Id*. ¶ 5.  The manner in which the defendants compensated the plaintiffs, in failing to pay them minimum wages each

6

week, was typical of the manner in which they compensated many other sales employees.  *Id.* ¶ 6.  The defendants continue to fail to pay their employees minimum wages.  *Id.* ¶ 8.

The plaintiffs named in the First Amended Complaint, Alison McCormick, Sean Foley, Tamra Philbrook, J. Ham Ying, Courtney Cooney, Marie Eastman, Scott Robinson, and Keith Wegener, seek to bring their state and federal claims on behalf of themselves and other similarly situated.  *Id.* ¶¶ 9, 32-34.

### C.  Discussion

### 1.  Rangeley Motion

Rangeley seeks dismissal of the plaintiffs' purported state-law class action on grounds that (i) a Rule 23 class action brought pursuant to the Maine employment practices law is incompatible with a collective action pursuant to the FLSA, (ii) the FLSA preempts the state-law claim, (iii) the plaintiffs fail to meet the prerequisites for certification of a Rule 23 class action, and (iv) the plaintiffs fail to state a claim against Rangeley pursuant to 26 M.R.S.A. § 670.  *See* Rangeley Motion at 1-2.  It seeks dismissal of the plaintiffs' FLSA claim on the ground that it fails to state a claim pursuant to 29 U.S.C. § 216(b).  *See id.* at 2.[4]

For the reasons that follow, I recommend that Rangeley's motion be denied.

---

[4] Rangeley also seeks dismissal of the case pursuant to Rule 12(b)(4), mistakenly cited as Rule 12(b)(3), for insufficient service of process.  *See* Rangeley Motion at 6-7; Fed. R. Civ. P. 12(b)(4).  However, Rangeley indicated that, if the court denied the plaintiffs' then-pending motion to remand, it likely would withdraw its motion to dismiss on that basis.  *See* Rangeley Motion at 7 n.2.  As noted above, the plaintiffs subsequently withdrew their motion to remand.  Rangeley has not explicitly withdrawn the Rule 12(b)(4) portion of its motion.  To the extent that it continues to press that argument, I recommend, for reasons articulated in my recommended decision on the plaintiffs' motion to remand, *see* Remand Decision at 6-8, which is incorporated herein by reference, that the court decline to dismiss the complaint on that basis.

### a. Asserted Incompatibility of Opt-In, Opt-Out Classes

The FLSA requires those wishing to join a collective action to enforce its provisions to affirmatively "opt in" by filing a written consent. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such [FLSA] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). By contrast, if a Rule 23(b)(3) class action is certified for purposes of state-law wage and hour claims, members of that class must affirmatively "opt out." *See* Fed. R. Civ. P. 23(c)(2)(B).

The "opt in" nature of an FLSA collective action is not accidental. At the time of its enactment in 1938, the FLSA itself employed an "opt out" class-action scheme. *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 305-06 (3d Cir. 2003). However, following the issuance of a 1946 Supreme Court decision that expanded the scope of compensable working time for FLSA purposes, employers were deluged with a flood of FLSA class actions. *See id.* at 306. Congress responded in 1947 by amending the FLSA to require "opt-in" participation only, endeavoring to strike a balance between the "immensity of the [litigation] problem" and employees' rights. *Id.* (citation and internal quotation marks omitted); *see also, e.g., Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1248 (11th Cir. 2003) ("Congress's aim in adding the 'opt-in' language to § 216(b) was to prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit. The consent in writing requirement sought to eradicate the problem of totally uninvolved employees gaining recovery as a result of some third party's action in filing suit.") (citations and internal punctuation omitted).

"Generally, the distinction between opt-in and opt-out classes is crucial." *De Asencio*, 342 F.3d at 310. "Under most circumstances, the opt-out class will be greater in number,

perhaps even exponentially greater." *Id*. "Opt-out classes have numbered in the millions." *Id*. *See also, e.g., Ellis v. Edward D. Jones & Co., L.P*., 527 F. Supp.2d 439, 444-45 (W.D. Pa. 2007) ("The most obvious effect of the choice of rule is on the size of the resulting classes.  The opt-in rate in a FLSA collective action not backed by a union is generally between 15 and 30 percent. . . .   The same inertia that promotes low response rates in opt-in collective actions fosters low *opt-out* rates in class actions maintained under Fed.R.Civ.P. 23(b)(3).") (emphasis in original).

Against this backdrop, Rangeley invites the court to rule that maintenance of so-called "hybrid" actions, combining FLSA collective actions with state-law wage and hour Rule 23 class actions, undermines the congressional opt-in policy reflected in the FLSA, necessitating dismissal of the state-law claims.  *See* Rangeley Motion at 8.  Rangeley does not identify the doctrinal basis or bases of its bid for dismissal on this ground, *see id*. at 7-8; however, it cites cases in which courts have (i) declined to exercise supplemental jurisdiction over a state-law class action primarily on that ground, *see De Asencio*, 342 F.3d at 308-12; *Warner v. Orleans Home Builders, Inc*., 550 F. Supp.2d 583, 588-90 (E.D. Pa. 2008), (ii) declined to exercise original jurisdiction over a state-law class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.A. § 1332(d), solely on that ground, *see Ellis*, 527 F. Supp.2d at 448-52, (iii) deemed certification of a Rule 23(b)(3) state-law class inappropriate partly on that ground, *see Moeck v. Gray Supply Corp*., No. 03-1950 (WGB), 2006 WL 42368, at *5 (D.N.J. Jan. 6, 2006), and (iv) dismissed a state-law class action pursuant to Rule 12(b)(6) or struck state-court class action allegations solely on that ground without explicit reference to a separate doctrinal underpinning, *see Evancho v. Sanofi-Aventis U.S. Inc*., Civil Action No. 07-2266 (MLC), 2007 WL 4546100, at *5 (D.N.J. Dec. 19, 2007); *Otto v. Pocono Health Sys*., 457 F. Supp.2d 522,

523-24 (M.D. Pa. 2006); *Herring v. Hewitt Assocs., Inc*., Civ. No. 06-267 (GEB), 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006).

In general, these courts perceive maintenance of side-by-side FLSA collective actions and Rule 23(b)(3) state-law class actions as thwarting Congress' "two-fold purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions[.]"   *Ellis*, 527 F. Supp.2d at 447 (citation and internal quotation marks omitted); *see also id.* at 446 ("[H]ybrid actions, which include both FLSA and state law claims, cause the FLSA claims to be swept into the case if class certification is granted.  Moreover, there is authority for the proposition that adjudication of similar state law claims precludes adjudication of claims under FLSA at a later date.") (citations and internal quotation marks omitted); Rachel K. Alexander, *Federal Tails and State Puppy Dogs: Preempting Parallel State Wage Claims To Preserve the Integrity of Federal Group Wage Actions* ("Alexander"), 55 Am. U. L. Rev. 515, 519 (Feb. 2009) ("Despite the varying approaches used to evaluate dual-filed suits, courts reach only one of two outcomes.  Either (1) the court agrees that the state class claim cannot appropriately exist in the same suit as a federal collective action and dismisses the state class claim without prejudice, or (2) the court maintains the state and federal claims together.") (footnote omitted).

Neither the First Circuit nor this court has considered this issue.  Courts that have done so are split as to whether, despite the clear differences between opt-in and opt-out modes of class actions, any such inherent incompatibility exists.  *See, e.g., Kaiser v. At the Beach, Inc*., Civil No. 08-CV-586-TCK-FHM, 2009 WL 4506152, at *5 (N.D. Okla. Nov. 24, 2009) ("Even assuming Plaintiffs did seek simultaneous certification of an FLSA opt-in class (for purposes of their FLSA claims) and a Rule 23 opt-out class (for purposes of their state law claims), courts are

split as to whether proceeding in such a manner is inherently 'incompatible.'"); Alexander, 55 Am. U. L. Rev. at 523-24 ("[D]istrict courts across the country have . . . split in deciding, both in outcome and reasoning, what difference § 216(b)'s opt-in provision and Rule 23's opt-out provision makes.  Recently, courts have issued inconsistent rulings on a weekly basis or better.") (footnotes omitted).

As the plaintiffs point out, *see* Plaintiffs' Response to Motion To Dismiss of Defendant Rangeley Lake Resort Development Company, LLC ("Plaintiffs' Opposition/Rangeley") (Docket No. 16) at 2-3, the United States District Court for the District of Massachusetts is among courts that have declined to discern such an irreconcilable conflict, observing:

> As other courts have noted, the FLSA action and state law remedies are entirely separate rights that may be pursued by the plaintiffs.  Thus, [employees'] failure to opt in to the FLSA litigation should not deprive them of their right to pursue a state law remedy through a single class action.  By enacting an opt-in regime for the FLSA, Congress sought to limit the scope of collective actions under federal law.  I should not, however, infer from that restriction on *federal* remedies a concomitant restriction on *state* remedies.  Nothing in the statute [29 U.S.C. § 216(b)] limits available remedies under state law.  Nor should I infer from an employee's election not to pursue a federal remedy a forfeiture of that employee's right to pursue a state remedy.  Requiring the employees who have not opted in to the FLSA claim to pursue duplicative litigation in state court would be a waste of judicial resources and would increase litigation costs for the parties, perhaps prohibitively so for the remaining putative class members.

*McLaughlin v. Liberty Mut. Ins. Co*., 224 F.R.D. 304, 308 (D. Mass. 2004) (citations omitted) (emphasis in original).

The *McLaughlin* court's reasoning is persuasive.  In the FLSA, Congress explicitly contemplated the coexistence of federal and state wage and hour laws and remedies, essentially setting a floor that states were free to exceed.  *See* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established

11

under this chapter or a maximum work week lower than the maximum workweek established under this chapter[.]"); *In re Farmers Ins. Exch.,* 481 F.3d 1119, 1134 (9th Cir. 2007) ("[T]he purpose behind the FLSA is to establish a national floor under which wage protections cannot drop, not to establish absolute uniformity in minimum wage and overtime standards nationwide at levels established in the FLSA.") (citation and internal quotation marks omitted).  Indeed, Maine has done so.  Its current mandated minimum wage of $7.50 per hour exceeds that set by the FLSA, $7.25 per hour.  *Compare* 26 M.R.S.A. § 664(1) *with* 29 U.S.C. § 206(a)(1)(C).

As the plaintiffs note, a number of courts have permitted hybrid actions.  *See* Plaintiffs' Opposition/Rangeley at 3-5 and cases cited therein.  Had Congress, at any time since 1947, perceived the use of an opt-out mechanism to vindicate state-law rights as creating an irreconcilable conflict with the use of the mandated opt-in mechanism to vindicate FLSA rights, it could have legislated the use of the opt-in mechanism for wage and hour litigation, whether state or federal, in federal court.  It has not done so.  *See Burkhart-Deal v. Citifinancial, Inc.,* C.A. No. 8-1289, 2008 WL 4793749, at *2 (W.D. Pa. Oct. 31, 2008) ("In the sixty years since Congress mandated opt-in collective actions under the FLSA, both Congress and state legislatures have had ample time to clarify whether the FLSA collective action statute was intended to completely preempt state law class actions.  That neither has chosen to do so indicates to me that Congress or the States or both intend to continue permitting class actions as a remedy for violations of state wage laws.  And, indeed, there are legitimate policy reasons for such a decision.  It has been repeatedly noted by courts and commentators that employees may be loath to identify themselves as opt-in or named plaintiffs in wage actions for fear of retaliation from the employer.") (citation and internal quotation marks omitted); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 162 (S.D.N.Y. 2008) ("[B]y its own terms, the opt-in requirement of

12

Section 216(b) applies only to wage claims brought under the substantive provisions of the FLSA. Congress has only spoken with regard to FLSA wage claims, not wage claims generally, and has expressed no policy preference with respect to whether to certify a class for state law wage claims.") (footnote omitted).

In addition, to the extent that courts have invoked 28 U.S.C. § 1367(c)(4) as a basis for declining to exercise supplemental jurisdiction over a state-law wage class action, at least one United States district court has questioned whether a perceived tension between opt-in and opt-out class action mechanisms constitutes a legitimate basis for declining to exercise supplemental jurisdiction on that ground. *See* 28 U.S.C. § 1367(c)(4) (court may decline to exercise supplemental jurisdiction if, *inter alia*, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction"); *Bamonte v. City of Mesa*, No. CV 06-01860-PHX-NVW, 2007 WL 2022011, at *4-*5 (D. Ariz. July 10, 2007) ("[T]he jurisdictional decision calculus prescribed at 28 U.S.C. § 1367(c)(4) does not permit a court to decline supplemental jurisdiction for any conceivable reason, even if that reason is 'compelling' in a colloquial sense. Rather, the 'compelling reasons' that may overcome supplemental jurisdiction under section 1367(c)(4) are carefully limited in type to those that lead a court to conclude that declining jurisdiction best accom[m]odates . . . the values of economy, convenience, fairness, and comity. The issue of congressional intent with respect to the FLSA is not an issue of judicial economy, convenience, fairness to the parties, or federal-state comity. As a result, it may not serve as a 'compelling reason' for declining supplemental jurisdiction. Second, the values of economy, convenience,

fairness, and comity on balance favor retaining supplemental jurisdiction, rather than declining it.") (citations and internal quotation marks omitted).[5]

While the maintenance of side-by-side opt-in and opt-out mechanisms may pose case management difficulties, it does not undermine Congress' purpose in limiting *FLSA collective actions* to opt-in participants only.[6]

Accordingly, I recommend that the court deny Rangeley's motion to dismiss on this basis.

### b. Preemption of State-Law Claims

Rangeley next argues that because the FLSA preserves the substantive rights of employees to bring collective actions to recover for violations of overtime and minimum wage laws, it preempts the plaintiffs' ability to bring a class action under Rule 23 for parallel state law claims. *See* Rangeley Motion at 9.

The First Circuit has explained:

---

[5] The United States District Court for the Eastern District of New York has gone so far as to state that the "cases which rely solely on the theory of inherent incompatibility [between the FLSA opt-in mechanism and Rule 23 procedures] are simply wrongly decided under an imaginary legal doctrine." *Guzman v. VLM, Inc*., No. 07-CV-1126 (JG)(RER), 2008 WL 597186, at *10 (E.D.N.Y. Mar. 2, 2008) (citation and internal punctuation omitted). Even assuming *arguendo* that the theory provides a legitimate basis on which to dismiss a state-law wage and hour class action claim, dismissal without prejudice does not solve the perceived problem. Employers remain subject to dual opt-in and opt-out wage suits, albeit through separate suits and/or in different courts, while employees continue to risk preclusion of FLSA claims if they fail to opt out of state-law wage and hour class actions. *See, e.g., Kuncl v. International Bus. Machs. Corp*., Case No. 08-CV-724-JHP, 2009 WL 3064659, at *6 & n.3, *8 (N.D. Okla. Sept. 23, 2009) (holding that worker who failed to opt in to FLSA collective action or opt out of accompanying hybrid Rule 23 state-law class action was bound, for purposes of FLSA claim, by Rule 23 adjudication; observing, "[T]he same *res judicata* issues would be present if a judgment was entered in a pure Rule 23 state-law class action if the facts giving rise to the class action were the same facts that formed the basis of a subsequent FLSA action.").

[6] Courts have emphasized the importance of clear notice to putative class members in reducing the potential for confusion concerning side-by-side opt-in and opt-out classes. *See DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F. Supp.2d 1026, 1033 (E.D. Wis. 2008) ("If the required showing for class certification is made, care will be required to draft a notice that properly explains the obligation members of the class have to opt out of the class if they wish to be excluded, as opposed to the obligation to opt in if they are to be included on the collective FLSA claim."); *Damassia*, 250 F.R.D. at 163 ("[T]he potential confusion to class members of receiving multiple notices is not a significant concern. Any possibility of confusion can be allayed through careful wording of the class notice, and any confusion that the dual notices may cause does not significantly undermine the superiority of a class action.") (citation and internal quotation marks omitted).

> To simplify a complex area of law, preemption arguments are generally divided into three categories. The first, express preemption, results from language in a statute revealing an explicit congressional intent to preempt state law. The second, field preemption, is that Congress may implicitly preempt a state law by creating a pervasive scheme of regulation. The third category is conflict preemption. In this category, state law is pre-empted to the extent it actually conflicts with federal law, that is, when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Weaver's Cove Energy, LLC v. Rhode Island Coastal Res. Mgmt. Council*, 589 F.3d 458, 472-73 (1st Cir. 2009) (citations and internal quotation marks omitted). Rangeley's argument implicates the third category of preemption, so-called conflict preemption. *See* Rangeley Motion at 9.[7]

The touchstone of preemption analysis is discerning congressional intent: courts "assume that the historic police powers of the States are not to be super[s]eded by Federal Act unless that is the clear and manifest purpose of Congress." *Pharmaceutical Research & Mfrs. of Am. v. Concannon*, 249 F.3d 66, 75 (1st Cir. 2001), *aff'd*, 538 U.S. 644 (2003) (citations and internal punctuation omitted). "[F]ederal preemption of a state law is strong medicine, and is not casually to be dispensed." *Id.* (citation and internal quotation marks omitted). "This is especially true when the federal statute creates a program, such as Medicaid, that utilizes cooperative federalism: Where coordinated state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal preemption becomes a less persuasive one." *Id.* (citation and internal quotation marks omitted).

---

[7] The First Circuit has held that there is no express or field preemption by the FLSA of state wage and hour laws. *See Maccabees Mut. Life Ins. Co. v. Perez-Rosado*, 641 F.2d 45, 46 (1st Cir. 1981). While it has held there can be no duplicative recovery for FLSA and parallel state-law claims, *see Roman v. Maietta Constr., Inc*., 147 F.3d 71, 76 (1st Cir. 1998), it has not addressed the question of whether there is conflict preemption of parallel state-law wage and hour claims.

As a threshold matter, it is unclear that the plaintiffs' state-law claims are "parallel" to their FLSA claims.  As noted above, Maine mandates a higher level of minimum wage than does the FLSA, and the FLSA explicitly preserves states' rights to mandate such higher protections. *See* 29 U.S.C. § 218(a).

However, even assuming *arguendo* that the instant action sets forth "parallel" FLSA and state claims, this court has held that the FLSA does not preempt even identical state claims.  *See Bolduc v. National Semiconductor Corp.*, 35 F. Supp.2d 106, 117 (D. Me. 1998).  *Bolduc* concerned an individual's claims, rather than a class action.  *See id.*  Nonetheless, Rangeley falls short of making a persuasive case that parallel class-action claims are preempted.  While Congress saw fit to direct that FLSA collective claims be pursued via an opt-in mechanism, it has expressed no opinion regarding the manner in which parallel state-law class action claims should be litigated.  It is a stretch to infer, from its silence in the face of the known use of so-called hybrid actions, an intention to cabin the mechanism by which state, as well as federal, claims should be collectively pursued.  *See, e.g., Cohen v. Gerson Lehrman Group, Inc.*, No. 09 Civ. 4352(PKC), 2010 WL 92484, at *4 (S.D.N.Y. Jan. 7, 2010) ("[N]othing in the text or legislative history of the FLSA reflects a purpose to undermine those coexisting state rights by denying employees access to the tools of the modern class action of today.") (citation and internal quotation marks omitted); *Hernandez v. Gatto Indus. Platers, Inc.*, No. 08 CV 2622, 2009 WL 1173327, at *3 (N.D. Ill. Apr. 28, 2009) ("The mere fact that Plaintiffs['] claims mix [state statutory] and FLSA causes of action, and the FLSA claims require different certification procedures than the [state statutory] claims do, does not raise conflict preemption problems or require the invalidation of the class certification procedures that govern Illinois law."); *DeKeyser*, 589 F. Supp.2d at 1032-33 (rejecting argument that FLSA opt-in mechanism

preempted Rule 23 opt-out procedure; observing, "An opt-out class under Rule 23 is the federal procedure usually applicable to claims seeking monetary relief on behalf of similarly situated individuals.  The FLSA modifies this procedure for claims brought pursuant to its provisions.  Because the FLSA does not expressly provide that its modified procedure applies to all wage disputes, Rule 23's usual course applies to Plaintiff's state law claims.") (citations and internal quotation marks omitted).[8]

The court accordingly should deny Rangeley's motion to dismiss on this basis.

### c.  Failure To Meet Rule 23 Prerequisites

Rangeley next asserts that the plaintiff's Rule 23 claims must be dismissed for failure to allege sufficient facts to permit certification of a class pursuant to Rule 23(a) and (b).  *See* Rangeley Motion at 10.  The plaintiffs protest that Rangeley's bid for dismissal on these grounds is premature, given that no discovery has even taken place.  *See* Plaintiffs' Opposition/Rangeley at 6-7.

The plaintiffs are correct.  No useful purpose would be served by dismissing their Rule 23 class action case on the basis of a failure to allege sufficient facts to demonstrate entitlement to class certification when, as yet, there has been no opportunity to engage in discovery, and the class certification process provides a superior means for testing the sustainability of maintenance

---

[8] Rangeley cites, *inter alia*, two United States Circuit Court of Appeals cases for the proposition that the FLSA preempts parallel state-law class actions, *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), and *Williamson v. General Dynamics Corp.*, 208 F.3d 1144 (9th Cir. 2000).  *See* Rangeley Motion at 9.  *Anderson* held that the FLSA preempted state-law claims that were dependent on proof of a violation of the FLSA.  *See Anderson*, 508 F.3d at 194 ("Congress prescribed exclusive remedies in the FLSA for violations of *its* mandates. . . .  [T]he Class Members' FLSA-based contract, negligence, and fraud claims are precluded under a theory of obstacle preemption.") (emphasis added).  Here, by contrast, the plaintiffs' state-law claims do not seek remedies for violations of the FLSA, but rather for violations of substantive state law.  *See generally* First Amended Complaint.  Although, in *Williamson*, the United States Court of Appeals for the Ninth Circuit stated that "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA[,]" *Williamson*, 208 F.3d at 1154, it also expressed doubt that the FLSA provides the exclusive remedy for duplicative or equivalent state-law claims, *see id.* at 1153.  "In the wake of *Williamson*, district courts in the Ninth Circuit have split over whether the FLSA preempts duplicative state law claims."  *Anderson*, 508 F.3d at 195 n.12.

of a class.  *See Cohen*, 2010 WL 92484, at *5 ("Because this is decided as a motion to dismiss or strike and no motion for certification by plaintiff is pending, the Court need not reach defendant's arguments addressed to the particular requirements of Rule 23.") (citation and internal quotation marks omitted); *Pirelli Armstrong Tire Corp. v. Walgreen Co*., No. 09 C 2046, 2009 WL 2777995, at *3 (N.D. Ill. Aug. 31, 2009) ("As an initial matter, both parties devote substantial analysis to the viability of a nationwide class action alleging consumer fraud. The putative class, all similarly situated [third-party payors] who had beneficiaries fill prescriptions at Walgreens, presents serious potential problems of manageability and conflict between the various states' consumer protection statutes.   Nonetheless, it is premature to engage in this analysis at the motion to dismiss stage, before Pirelli has even moved for class certification."); *In re Wal-Mart Stores, Inc. Wage & Hour Litig*., 505 F. Supp.2d 609, 615 (N.D. Cal. 2007) ("[T]he granting of motions to dismiss class allegations before discovery has commenced is rare.  Indeed, while there is little authority on this issue within the Ninth Circuit, decisions from courts in other jurisdictions have made clear that dismissal of class allegations at the pleading stage should be done rarely and that the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery.") (citation and internal quotation marks omitted).

In any event, I have granted the plaintiffs' motion to amend their complaint to allege with more particularity that they meet the requisites of a Rule 23 class action.

Rangeley's bid for dismissal on this basis, therefore, should be denied.

### d.  Failure To State Claim Pursuant to Maine Law

Rangeley next seeks dismissal of the plaintiffs' state-law claims on the basis that, in failing to allege the existence of an employment contract, they fall short of stating a claim that

they were "employees" for purposes of 26 M.R.S.A. § 664.  *See* Rangeley Motion at 18-19.

Rangeley adds that the plaintiffs fail to delineate their claimed work hours or to establish a joint

obligation on the part of both defendants.  *See id*. at 19.  Rangeley finally asserts that the

plaintiffs fail, as a matter of law, to allege entitlement to overtime pay by omitting to allege that

their hours and places of employment were substantially controlled by their employer.  *See id*.

These contentions are without merit.  The plaintiffs allege that (i) they are salespeople

who were employed on the premises of Rangeley and its successor, Festiva, (ii) they performed

the task of selling time shares to customers who came into the defendants' offices, (iii) their

earnings were derived exclusively from sales commissions, so that in several weeks they were

paid less than the minimum wage during the first 40 hours of their employment and less than one

and a half times their regular rate in weeks that they worked more than 40 hours, and (iv) their

hours and places of employment were substantially controlled by the defendants.  *See* First

Amended Complaint at 1-2.  They further allege that Festiva is the successor to Rangeley and

that certain named plaintiffs were employed only by Festiva, others only by Rangeley, and others

by both.  *See id*. at 3-5.

This suffices to make out a plausible claim that (i) the plaintiffs were employed by one or

both defendants, meeting the statutory definition of employees, that is, individuals "employed or

permitted to work by an employer[,]" 26 M.R.S.A. § 663(3), (ii) the defendants failed to pay

minimum wages or overtime wages, and (iii) the plaintiffs did not fall under an exemption for

"employees whose earnings are derived in whole or in part from sales commissions and whose

hours and places of employment are not substantially controlled by the employer[,]" *id*.

§ 663(3)(C).

### e.  Failure To State Claim Under FLSA

Finally, Rangeley contends that the plaintiffs' complaint fails to state a claim under the FLSA because the named plaintiffs neglected either to file written consents to join a collective action or to allege that such consents exist, as required by 29 U.S.C. § 216(b), and failed to allege the existence of any employment contract.  *See* Rangeley Motion at 19-20.

Failure to allege the existence of an employment contract is not fatal to the maintenance of an FLSA claim.  *See, e.g., Warner*, 550 F. Supp.2d at 589 ("the FLSA claim does not require an intent to form a contract").  The plaintiffs' allegations suffice to make out a plausible case that they were one or both defendants' "employees," defined for purposes of the FLSA as "any individual[s] employed by an employer."  29 U.S.C. § 203(e)(1).

Rangeley is correct that section 216(b) requires even named plaintiffs to file consent to join an FLSA collective action.  *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *see also, e.g., Kaiser*, 2009 WL 4506152, at *7 ("In the event Plaintiffs' FLSA claims are allowed to proceed as a collective action, any and all named Plaintiffs must have filed consents by the Court's deadline in order to remain parties to the collective action"); *Lago v. Amoa Constr. & Dev. Corp*., No. 08-20994-CIV, 2008 WL 4540062, at *2 (S.D. Fla. Oct. 10, 2008) (while section 216(b) does not expressly state that both named and opt-in plaintiffs must file written consents, 29 U.S.C. § 256 clarifies that they do).

Nonetheless, even had the plaintiffs not already moved to correct this problem by filing a motion to amend, it would have been appropriate to afford them the opportunity to do so.  *See Kaiser*, 2009 WL 4506152, at *7 (dismissal of named plaintiffs' claims for failure to file a

written consent to opt in to litigation premature); *Lago*, 2008 WL 4540062, at *2 ("Although there is a procedural deficiency where the written consent was not filed, it does not necessarily follow that the Defendants' motion [to dismiss] must be granted.  There is nothing in section 216(b) or section 256 that requires the Court to dismiss a complaint where a written consent has not been filed.  To the contrary, section 256 expressly allows for a collective action to commence after the complaint has been filed, upon the filing of the written consent.") (citations omitted).

No useful purpose would be served by dismissing the plaintiffs' FLSA claim on this basis.  Hence, I recommend that the court decline to do so.

## 2.  Festiva Motion

Festiva seeks dismissal of the plaintiffs' state-law causes of action on two grounds: that (i) the complaint fails to allege that the plaintiffs made appropriate demand for payment in accordance with 26 M.R.S.A. §§ 626 and 626-A, and (ii) maintenance of an opt-out class action pursuant to Rule 23 is inherently incompatible with maintenance of an opt-in FLSA collective action.  *See* Festiva Motion at 3-9.

### a.  Demand for Payment

Festiva first argues that the state-law claims must be dismissed because the plaintiffs fail to allege that they made a demand upon Festiva for unpaid wages prior to bringing suit, as required by 26 M.R.S.A. §§ 626 and 626-A.  *See* Festiva Motion at 3.  The plaintiffs rejoin that they bring the instant state-law claims pursuant to a different statute that imposes no such requirement, 26 M.R.S.A. § 670.  *See* Plaintiffs' Response to Defendant Festiva's Motion To Dismiss (Docket No. 18) at 2.  Festiva responds that sections 626, 626-A, and 670 must be construed together, and that a claim for unpaid minimum wages is a claim for unpaid wages as

the latter term is used in sections 626 and 626-A.  *See* Defendant Festiva's Reply in Support of

Its Motion To Dismiss (Docket No. 21) at 1-3.  The plaintiffs have the better argument.

Sections 626 and 626-A are contained within subchapter 2 (Wages and Medium of

Payment) within chapter 7 (Employment Practices).   Section 626, titled "Cessation of

employment," states, in relevant part:

> An employee leaving employment must be paid in full within a reasonable time
> after demand at the office of the employer where payrolls are kept and wages are
> paid . . . .   Whenever the terms of employment include provisions for paid
> vacations, vacation pay on cessation of employment has the same status as wages
> earned.
>
> \*\*\*
>
> An action for unpaid wages under this section may be brought by the affected
> employee or employees or by the Department of Labor on behalf of the employee
> or employees.  An employer found in violation of this section is liable for the
> amount of unpaid wages and, in addition, the judgment rendered in favor of the
> employee or employees must include a reasonable rate of interest, an additional
> amount equal to twice the amount of those wages as liquidated damages and costs
> of suit, including a reasonable attorney's fee.

26 M.R.S.A. § 626.

Section 626-A, also contained within subchapter 2 and titled "Penalties," provides, in

relevant part:

> Any employer is liable to the employee or employees for the amount of unpaid
> wages and health benefits.  Upon a judgment being rendered in favor of any
> employee or employees, in any action brought to recover unpaid wages or health
> benefits under this subchapter, such judgment includes, in addition to the unpaid
> wages or health benefits adjudged to be due, a reasonable rate of interest, costs of
> suit including a reasonable attorney's fee, and an additional amount equal to twice
> the amount of unpaid wages as liquidated damages.
>
> Remedies for unpaid wages do not become available to the employee except as
> follows.  If the wages are clearly due without a bona fide dispute, remedies are
> available to the employee 8 days after the due date for payment.  If there is a bona
> fide dispute at the time payment is due, remedies become available to the
> employee 8 days after demand when the wages are, in fact, due and remain
> unpaid.

*Id*. § 626-A.  By contrast, section 670, which the plaintiffs invoke, *see* First Amended Complaint ¶ 1, is contained within subchapter 3 (Minimum Wages) of chapter 7.  Titled "Employees' remedies," it provides:

> Any employer shall be liable to the employee or employees for the amount of unpaid minimum wages.  Upon a judgment being rendered in favor of any employee or employees, in any action brought to recover unpaid wages under this subchapter, such judgment shall include, in addition to the unpaid wages adjudged to be due, an additional amount equal to such wages as liquidated damages, and costs of suit including a reasonable attorney's fee.

*Id*. § 670.  The plaintiffs invoke the statute to recover for alleged minimum wage and overtime pay violations, both of which are addressed in section 664, also part of subchapter 3.  *See id*. § 664(1) & (3).

The plaintiffs correctly describe sections 626 and 626-A as comprising a separate and distinct remedy from that provided in section 670.  Section 670, by its terms, provides a remedy for claims brought pursuant to subchapter 3, while section 626-A provides a remedy for claims brought pursuant to subchapter 2.  What is more, the remedies differ.  Section 626-A provides for twice as much in liquidated damages as does section 670.  *Compare id*. § 626-A *with id*. § 670.  Further, section 626, unlike section 670, addresses wages due on cessation of employment.  *Compare id*. § 626 *with id*. § 670.  In addition, the Law Court has construed section 626 as a distinct wage remedy scheme from section 670.  *See Avery v. Kennebec Millwork, Inc*., 2004 ME 147, ¶¶ 9-10, 861 A.2d 634, 636-37 (rebuffing plaintiff's claim for double his actual damages pursuant to section 626 when his complaint seeking overtime pay was brought pursuant to, and cited, section 664, which is part of the minimum wage statute; noting, "Violations of section 664 entitle employees to the remedies provided in section 670.").

Section 670 does not require that a plaintiff make a demand for wages prior to filing suit. *See* 26 M.R.S.A. § 670.  Hence, Festiva's bid for dismissal of the plaintiffs' state law claims on the ground of failure to plead that such a demand was made should be denied.

### b.  Asserted Incompatibility of Opt-In, Opt-Out Classes

Festiva, like Rangeley, finally seeks dismissal of the plaintiffs' state-law wage claims on the basis of the asserted inherent incompatibility between a Rule 23 opt-out class action and an FLSA opt-in collective action.  *See* Festiva Motion at 4-9.  For the reasons articulated above, I recommend that the court deny its motion to dismiss the state-law claims on this basis.[9]

### III.  Conclusion

For the foregoing reasons, I **GRANT** the plaintiffs' motion to amend their complaint and **DIRECT** that they file their Second Amended Complaint by February 18, 2010, and recommend that the court **DENY** the defendants' motion to dismiss.

---

[9] Festiva elaborates upon Rangeley's argument by asserting that its position is supported by the legislative history of the 1947 amendment, indicating Congress' intent to "prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit[,]" Festiva Motion at 6 (quoting *Cameron-Grant*, 347 F.3d at 1248), and (ii) serious concern for the substantive rights of plaintiffs to litigate their own overtime and minimum wage claims and of Festiva not to be bound by a judgment in a Rule 23 state-law wage and hour class action that, *via* claim preclusion, effectively would adjudicate the FLSA claims of absent class members, *see id*. at 6-9.  Yet, as one court has observed, "Even if the right to opt-in is a substantive [*versus* procedural] right, the right is not modified or abridged in any way by permitting a state law opt-out class to proceed alongside the FLSA opt-in class in the same case" when "plaintiffs are not attempting to invoke the procedures of Rule 23 to pursue the FLSA claim as an opt-out class."  *Westerfield v. Washington Mut. Bank*, No. 06-CV-2817, 2007 WL 2162989, at *2 (E.D.N.Y. July 26, 2007).

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 11th day of February, 2010.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge