UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ALISON McCORMICK, et al., )
 )
       Plaintiffs )
 )
v. ) Civil No. 09-365-P-S
 )
FESTIVA DEVELOPMENT GROUP, )
LLC, et al., )
 )
       Defendants )

### *MEMORANDUM DECISION ON DEFENDANT'S MOTION TO SEVER*

Defendant Rangeley Lake Resort Development Company, LLC ("Rangeley") moves pursuant to Federal Rule of Civil Procedure 21 to sever itself from the instant suit, arguing that it was misjoined as a defendant. *See* Defendant Rangeley Lake Resort Development Company, LLC's Motion To Sever Pursuant to Fed. R. Civ. P. 21 ("Motion") (Docket No. 71). For the reasons that follow, the Motion is denied.[1]

### **I. Applicable Legal Standards**

Federal Rule of Civil Procedure 21 provides, in relevant part: "On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "The rule does not define the grounds for misjoinder, but it is well-settled that parties are misjoined when the preconditions for permissive joinder in Rule 20(a) are not met." *Beaulieu v. Concord Group Ins. Co.*, 208 F.R.D. 478, 479 (D.N.H. 2002). "To properly join two or more defendants in one action, the plaintiff must allege facts that show: (1) that the right to relief asserted against the

---

[1] "Because a motion to sever is not dispositive of an action, a magistrate judge may hear and determine the motion, subject to reconsideration by a district judge upon a showing that the magistrate judge's order is clearly erroneous or contrary to law." *United States v. Bolden*, No. CR08-0001, 2008 WL 4174914, at *1 n.1 (N.D. Iowa Mar. 7, 2008).

defendants arises out of the same transaction, occurrence, or series of transactions or occurrences, and (2) that a question of law or fact in common to both defendants will arise in the action." *Id.*; *see also* Fed. R. Civ. P. 20(a)(2) (persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action").

"When appropriate, the joinder rules result in beneficial economies of scale and judicial efficiency by resolving related issues in a single lawsuit." *Beaulieu*, 208 F.R.D. at 479. "Therefore, the preconditions for permissive joinder are construed liberally in order to promote the broadest scope of action consistent with fairness to the parties." *Id*. "However, the determination of whether parties have been misjoined lies within the sound discretion of the district court." *Id*.

"If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Helm v. Alderwoods Group, Inc.*, No. C 08-01184 SI, 2010 WL 2219722, at *1 (N.D. Cal. May 28, 2010) (citation and internal quotation marks omitted). "Even if the permissive joinder requirements are met, the court may sever to avoid delay, jury confusion, or prejudice to the moving party." *Id*.

## II. Factual Background

The instant action was initiated in state court on June 26, 2009, and removed by Rangeley to this court on August 12, 2009. *See* Docket Nos. 1-2. Following the resolution of a motion for remand, which ultimately was withdrawn, and two motions to dismiss, *see* Docket Nos. 5, 7, 14, 25, 30, 31, 48, 56, the discovery deadline was reset to April 1, 2011, *see* Docket No. 67.

Discovery has only recently begun. *See* Defendant Festiva's Opposition to Defendant Rangeley's Motion To Sever ("Festiva's Opposition") (Docket No. 76) at 2, 4; Plaintiffs' Opposition to Defendant Rangeley's Motion To Sever ("Plaintiffs' Opposition") (Docket No. 78) at 1, 3.

### A. Plaintiffs' Allegations

The plaintiffs, on behalf of themselves and others similarly situated, seek relief for the defendants' alleged violations of federal and Maine overtime-pay and minimum-wage laws. *See* Third Amended Complaint (Docket No. 84) ¶¶ 1-4.[2] They propose to do so through the vehicles of a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and a class action pursuant to Federal Rule of Civil Procedure 23 targeting violations of Maine law. *See id.*

The "Collective Class" pursuant to the FLSA would consist of "[a]ll persons who are or have been employed by Defendants as a Sales Representative or some similar title, who were paid solely on a commission basis, at any time within three years prior to this action's filing date through the final disposition of this case." *Id*. ¶ 23. The "Maine Class" pursuant to Rule 23 would consist of "[a]ll employees of Defendants who were, are, or will be employed in the State of Maine as Sales Representatives or some similar title, who were paid solely on a commission basis, at any time within six years prior to this action's filing date through the final disposition of this case." *Id*. ¶ 30.

---

[2] Following the filing of the instant motion, the plaintiffs sought and were granted permission to file a Third Amended Complaint naming as a third defendant Perry Williams, the managing partner of Rangeley. *See* Docket Nos. 75, 83. The Third Amended Complaint is in all other respects virtually identical to the Second Amended Complaint, the operative complaint at the time of the filing of the motion. *Compare* Third Amended Complaint *with* Second Amended Complaint (Docket No. 50). Accordingly, I refer to the Third Amended Complaint in setting forth the plaintiffs' allegations.

The plaintiffs allege, in relevant part, that:

1. They were or are employed by Rangeley and/or its successor, Festiva Development Group, LLC ("Festiva"), and Williams as sales representatives or some similar title. *Id.* ¶ 1.

2. They performed tasks of selling timeshare interests to the general public and were paid exclusively on a commission basis. *Id.* During all relevant times, they were employed on the defendants' premises, and the defendants substantially controlled their hours and places of employment. *Id.*

3. During the Collective Class and Maine Class periods, the defendants failed to pay appropriate compensation, including overtime compensation and minimum wage, to each member of the Collective Class and the Maine Class as required by federal and state law. *Id.* ¶ 4.

4. Rangeley, a corporation of the State of Maine doing business in Portland, Maine, employed certain of the plaintiffs during all relevant times at the same location as that of Festiva. *Id.* ¶ 17. Festiva is a foreign corporation qualified to do business in the State of Maine and having a place of business in Portland, Maine. *Id.* ¶ 18. It employed certain of the plaintiffs, at all relevant times, at the same location as that of Rangeley. *Id.*

5. The defendants suffered and permitted the plaintiffs and the Collective Class to work without being paid minimum wage compensation and to work more than 40 hours a week without appropriate overtime compensation. *Id.* ¶ 24.

6. The defendants' unlawful conduct has been widespread, repeated, and consistent. *Id.* ¶ 25. The defendants have operated under a scheme to deprive these employees of appropriate minimum wage and overtime compensation by failing to compensate them properly for all hours worked. *Id.* ¶ 26. The defendants misclassified the plaintiffs and members of the

Collective Class who had the job title of sales representative as "independent contractors" or "exempt" from federal overtime laws. *Id.* ¶ 27.

7. There are common questions of law and fact as to all members of the proposed Maine Class. *Id.* ¶ 35. These common questions include whether the defendants improperly classified the plaintiffs and members of the Maine Class who had the job title of sales representatives as independent contractors or exempt employees, and whether the defendants unlawfully failed to fully pay appropriate compensation, including minimum wage and overtime compensation, to members of the Maine Class in violation of Maine state wage laws. *Id.*

**B. Rangeley's Evidence**

In support of its Motion, Rangeley provides an affidavit of Perry Williams, the managing member of Rangeley, stating that:

1. Rangeley was formed in April 2000 for the purpose of selling timeshare units at Rangeley Lake in Maine. Affidavit of Perry Williams, in Support of Defendant Rangeley Lake Resort Development Company, LLC's Motion To Sever ("Williams Aff.") (Docket No. 71-1), attached to Motion, ¶ 3.

2. During the years of operation, Rangeley contracted with roughly 170 sales representatives to sell timeshare units. *Id.* ¶ 4.

3. Rangeley operated for roughly eight years, until the remaining timeshare intervals in Rangeley Lake Resort were sold to Festiva in 2008. *Id.* ¶ 5.

4. Rangeley no longer conducts its timeshare selling business. *Id.* ¶ 6.

5. After Rangeley sold its operations to Festiva, Festiva ran its own independent business selling timeshare intervals in the Festiva Adventure Club. *Id.* ¶ 7. The purchasers of

5

timeshare intervals in that club receive membership that entitles them to intervals in time in Festiva's national network properties. *Id.*

6. At the time of the purchase, Festiva also maintained other sales offices around the country. *Id*. ¶ 8.

7. Rangeley and Festiva are entirely separate entities. *Id*. ¶ 9.

8. Neither Rangeley nor its members or officers has any ownership or other interest in Festiva. *Id*. ¶ 10. Likewise, neither Festiva nor any of its shareholders or officers has any ownership or other interest in Rangeley. *Id.*

9. Festiva and Rangeley used different independent contractor terms with their sales representatives. *Id*. ¶ 11.

10. Rangeley and Festiva had no agreement, correspondence, or communication regarding how to utilize or compensate sales representatives, and any similarities between the two companies in their use of them is purely coincidental. *Id*. ¶ 12.

11. Upon information and belief, of the 170 or so former sales representatives who worked for Rangeley, only two sought subsequent employment with Festiva. *Id*. ¶ 13. Upon information and belief, at no time did any sales representative used by Rangeley ever perform work concurrently for Festiva. *Id*. ¶ 14.

12. Festiva, unlike Rangeley, is still in operation, has multiple sales locations throughout the United States, and has used, and continues to use, hundreds of sales representatives. *Id*. ¶ 15.

### C. Plaintiffs' Evidence

In support of their opposition to the Motion, the plaintiffs offer the declarations of Athena Keller and J. Ham Ying. *See* Declaration of Athena Keller in Support of Plaintiffs' Response to

Defendant Rangeley's Motion To Sever ("Keller Decl.") (Docket No. 78-1), attached to Plaintiffs' Opposition; Declaration of J. Ham Ying in Support of Plaintiffs' Response to Defendant Rangeley's Motion To Sever ("Ying Decl.") (Docket No. 78-2), attached to Plaintiffs' Opposition.

Keller, a plaintiff in this action, was employed by Rangeley from approximately 2005 to approximately September or October 2008 and continued her employment with Festiva at the same Portland, Maine, location until approximately May 2009. Keller Decl. ¶¶ 1-2. Ying, also a plaintiff in this action, was employed by Rangeley from approximately 2002 to approximately September or October 2008. Ying Decl. ¶¶ 1-2. After Festiva purchased Rangeley, he continued his employment with Festiva at the same Portland, Maine, location for approximately one month. *Id*.

Neither Keller nor Ying actively sought employment with Festiva after the sale or was told to reapply for his or her job. Keller Decl. ¶ 3; Ying Decl. ¶ 3. Rather, upon information and belief, they began automatically working for Festiva. *Id*. Both were classified as independent contractors by Rangeley. *Id*. Keller and Ying believe that other sales representatives employed by Rangeley also began working automatically for Festiva without reapplying for their positions. *Id.* ¶ 4.

As sales representatives, Keller and Ying were responsible for selling timeshare units. *Id.* ¶ 5. As Rangeley employees, they sold units at the Rangeley Lake property. *Id*. As Festiva employees, they sold points that could be used for stays with the Festiva Adventure Club. *Id*. Although members of the Festiva Adventure Club could use their points to stay at various locations, most of the clients who purchased time shares from Keller and Ying were local clients who were interested only in staying at the Rangeley Lake property. *Id*.

Keith McMullen was Keller's and Ying's manager when Festiva purchased Rangeley and remained their manager after the sale, although he resigned approximately one month later. *Id.* ¶ 6. Rangeley's dress code required business attire. *Id.* ¶ 7. The dress code remained the same after the sale to Festiva. *Id.* Upon information and belief, Keller's and Ying's compensation schedule did not change after the sale. *Id.* They continued to work in the same building after the sale. *Id.* Upon information and belief, Rangeley and Festiva used the same marketing company to schedule appointments for the sales representatives. *Id.* ¶ 8.

The only change in Keller's and Ying's job duties after the sale was that they were required to perform cleaning duties when employed by Festiva. *Id.* ¶ 9. When Keller and Ying were hired by Rangeley, they were required to spend a weekend at Rangeley Lake Resort to familiarize themselves with the product. *Id.* ¶ 10. When new sales representatives were hired by Festiva to work in the Portland office, they were required to spend a weekend at Rangeley Lake Resort, as well. *Id.*

### III. Discussion

Rangeley seeks severance from the instant action on two bases: that it was misjoined, given insufficient connections to Festiva to pass the "transactional relatedness" test, and that requiring it to litigate this matter with the much larger Festiva would cause it serious hardship and prejudice. *See* Motion at 1-6.

The plaintiffs and Festiva oppose the motion, arguing that a severance decision is premature at this stage of the proceedings and, in any event, Rangeley fails to make a persuasive case for severance on either proffered basis. *See* Festiva's Opposition at 2-6; Plaintiffs' Opposition at 3-8.

## A. Transactional Relatedness Test

Rangeley relies on *Don King Prods., Inc. v. Colon-Rosario*, 561 F. Supp.2d 189 (D.P.R. 2008), for the proposition that it is appropriate to examine the following factors in determining whether the transactional relatedness test is met: (i) whether the defendants were alleged to have acted in concert, (ii) whether the only connection between them is that they are alleged to have violated the same law, (iii) whether they are likely to have different defenses, and (iv) whether different evidence will apply to each defendant. *See* Motion at 4-5; *Don King*, 561 F. Supp.2d at 192. It argues that none of these factors weighs in favor of its continued joinder. *See* Motion at 4-5; Defendant Rangeley Lake Resort Development Company, LLC's Reply to Defendant Festiva's Opposition to Rangeley's Motion To Sever Pursuant to Fed. R. Civ. P. 21 ("Reply") (Docket No. 81) at 2-7.

The plaintiffs and Festiva correctly point out that the test of transactional relatedness is broader and more flexible than Rangeley suggests. *See* Plaintiffs' Opposition at 5; Festiva's Opposition at 2 n.1; *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Accordingly, all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.") (citations and internal quotation marks omitted); *Montgomery v. STG Int'l, Inc*., 532 F. Supp.2d 29, 35 (D.D.C. 2008) ("Rule 20(a)'s first prong is met if the claims are logically related. This is a flexible test where the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties.") (citations and internal punctuation omitted); *John S. Clark Co. v. Travelers Indem. Co. of Ill*., 359 F. Supp.2d 429, 437-38 (M.D.N.C. 2004) (same;

"joinder of claims, parties and remedies is strongly encouraged") (citation and internal quotation marks omitted); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1653, at 409 (3d ed. 2001) ("Instead of developing one generalized test for ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, the courts seem to have adopted a case-by-case approach. As stated by one district court judge: there can be no hard and fast rule, and . . . the approach must be a general one of whether there are enough ultimate factual concurrences that it would be fair to the parties to require them to defend jointly the several claims against them[.]") (citations, footnotes, and internal punctuation omitted).

As the plaintiffs note, *Don King* is distinguishable. *See* Plaintiffs' Opposition at 5 n.3. In *Don King*, the only connection among the 37 defendants was that they were alleged to have pirated one or more of three boxing-match shows aired at different times. *See Don King*, 561 F. Supp.2d at 190. The court understandably considered whether any other factual concurrence, for example, the existence of concerted action or common evidence, might fulfill the transactional relatedness test. In this case, by contrast, Rangeley sold its timeshare business to Festiva, and Festiva continued that business, albeit with alterations. Festiva represents that the evidence will show that it entered into a contractual relationship with Rangeley on September 2, 2008, that specifically addresses the legal liabilities arising out of the plaintiffs' and putative class members' employment. *See* Festiva's Opposition at 1.

As Festiva argues, *see id*. at 2, defendants' status as predecessor and successor corporations can suffice to meet the transactional relatedness test, *see, e.g., Kolosky v. Anchor Hocking Corp.*, 585 F. Supp. 746, 749-50 (W.D. Pa. 1983) (permitting joinder of a successor corporation as a defendant when plaintiffs adduced undisputed evidence that the successor had

continued the same disputed employment practices as its predecessor, and only the successor could provide the prospective relief requested). In this case, as in *Kolosky*, the remedies sought include injunctive relief in the form of an order directing the defendants to cease and desist from activities found to be in violation of state laws, *see* Third Amended Complaint at 13, and the plaintiffs allege that Festiva continued the same objected-to wage and hour practices as its predecessor, Rangeley, *see id.* ¶¶ 1-4. To the extent that Rangeley is found liable, injunctive relief seemingly could be had only against its successor, Festiva.

For these reasons, the complaint sets forth a scenario in which the transactional relatedness test would be met. Further, the plaintiffs indicate that they intend to undertake discovery bearing on the issue of the interrelatedness, contractually or otherwise, of Festiva and Rangeley. *See* Plaintiffs' Opposition at 3, 7. In these circumstances, severance based on an asserted failure to meet the transactional relatedness test accordingly is premature. *See, e.g., Helm*, 2010 WL 2219722, at *1 ("[I]n light of plaintiffs' representation that they need further time to conduct additional discovery for the purpose of renewing their motion for class certification, the Court believes that granting severance at this time would be premature."); *Montgomery*, 532 F. Supp.2d at 36 (severance was premature when the plaintiffs had alleged a possible basis to meet Rule 20(a)'s requirements and had not yet had the benefit of discovery); *Lane v. Tschetter*, Civil Action No. 05-1414 (EGS), 2007 WL 2007493, at *7 (D.D.C. July 10, 2007) (same).

In any event, even assuming *arguendo* that the *Don King* factors apply, Rangeley falls short of making a persuasive case that severance is appropriate at this stage of the proceedings:

1. <u>Concerted Action</u>. Rangeley maintains that there is no allegation of concerted action. *See* Motion at 5; Reply at 4-5. However, the complaint can be construed to make such

11

an allegation. *See* Third Amended Complaint ¶ 26 ("Upon information and belief, Defendants have operated under a scheme to deprive these employees of appropriate minimum wage and overtime compensation by failing to properly compensate them for all hours worked.").[3] Rangeley also contends that in fact there was no tie between its conduct and that of its successor, with sales representatives having worked pursuant to separate and unrelated compensation agreements and under entirely different working conditions for each defendant. *See* Motion at 5; Reply at 5. Yet, the plaintiffs dispute that fact, adducing evidence, for purposes of opposing the instant motion, that sales representatives' working conditions and terms did not materially change upon the sale of Rangeley's timeshare business to Festiva, *see* Keller Decl.; Ying Decl., and indicating that they intend to explore in discovery (i) the nature and terms of the sale from Rangeley to Festiva, (ii) the origins of the classification systems of Rangeley and Festiva, and (iii) the relatedness between the two companies, *see* Plaintiffs' Opposition at 3. Any conclusion that there was no concerted action therefore is premature. *See, e.g., Helm*, 2010 WL 2219722, at *1; *Montgomery*, 532 F. Supp.2d at 36; *Lane*, 2007 WL 2007493, at *7.

    2.    <u>Connection Between Defendants</u>. Rangeley argues that there is no connection between itself and Festiva other than that they both are alleged to have violated wage and hour laws. *See* Motion at 5; Reply at 5-6. That is incorrect. Festiva bought Rangeley's timeshare business and continues to operate it from the same location as Rangeley did. Moreover, as noted above, the plaintiffs allege that Festiva continued Rangeley's objectionable wage and hour practices, *see* Third Amended Complaint ¶¶ 1-4, adduce evidence that this was the case, *see*

---

[3] Rangeley points out that the plaintiffs do not allege that the defendants schemed together, *see* Reply at 4-5, and the complaint thus can be construed to allege that each pursued a separate scheme. While the complaint can be read in that manner, the plaintiffs make clear that they intend to pursue in discovery whether there were agreements or connections between Rangeley and Festiva touching on treatment of sales representatives. *See* Plaintiffs' Opposition at 3, 7. It is simply too soon to know whether there was or was not anything that might be deemed "concerted action" between Rangeley and Festiva.

Keller Decl.; Ying Decl., and represent that they intend to explore, through discovery, the contractual and other possible connections between Rangeley and Festiva, *see* Plaintiffs' Opposition at 3. Festiva, as well, asserts that "there are many points of contact between Rangeley and Festiva with respect to the Plaintiffs at issue in this case" that "will be established in discovery." Festiva's Opposition at 5. By virtue of Festiva's purchase of Rangeley's timeshare business, there is a greater connection between the two defendants than mere allegation that they violated the same laws. Moreover, the plaintiffs and Festiva represent that they intend through discovery to explore in detail the precise nature of the interconnections between the two. Any finding that the defendants lack sufficient connection to satisfy the transactional relatedness test therefore is premature. *See, e.g., Helm*, 2010 WL 2219722, at *1; *Montgomery*, 532 F. Supp.2d at 36; *Lane*, 2007 WL 2007493, at *7.

3. <u>Differences in Defenses</u>. Rangeley maintains that because the defendants are separate entities that used sales representatives at different times pursuant to separate agreements and practices, the defenses of Rangeley and Festiva necessarily will be different. *See* Motion at 5-6; Reply at 2-3. For example, it states, defenses such as the statute of limitations, independent contractor status, the outside salesperson exemption, the payment or earning by commission, and whether the workers were involved in interstate commerce necessarily will hinge on different facts for each defendant. *See* Motion at 5-6. However, this point, as well, is contested. Festiva asserts that the majority of legal defenses in this case will be identical. *See* Festiva's Opposition at 5-6.[4]

---

[4] In its reply memorandum, Rangeley contends that it has a strong defense, applicable only to it, in the form of a 2003 determination from the Maine Unemployment Insurance Commission that a former sales representative was not an employee for purposes of unemployment insurance. *See* Reply at 3 & Exh. A thereto. By raising this point for the first time in its reply, Rangeley deprives the plaintiffs and Festiva of the opportunity to respond and the court of the benefit of any such response. The point accordingly is deemed waived. *See, e.g., In re One Bancorp Sec.*
*(continued on next page)*

Rangeley adds that it has separate and distinct arguments against class certification than those of Festiva and a much higher likelihood of success, particularly with respect to the numerosity requirement. *See* Motion at 6; Reply at 2. It contends that severing it from a potential class action would simplify the litigation for all parties and prevent the injustice of subjecting it to a class action simply because the plaintiffs, without any reasonable basis, listed it as a co-defendant of the much larger Festiva. *See* Reply at 2-3. For all of the reasons stated in this decision, Rangeley has not shown that the plaintiffs' naming of it as a co-defendant lacked any reasonable basis. The fact that Rangeley would be in a better position to defend against a class action if severed, standing alone, provides an insufficient basis for severance.

4. <u>Differences in Evidence</u>. Rangeley argues that because the claims against it and Festiva involve different time periods, employment practices, and sales representatives, there will be different evidence as to each defendant. *See* Motion at 6: Reply at 3-4. It also points out that the products sold are significantly different: It sold timeshare units at a single location, while Festiva sells membership in a club that provides intervals of time at a nationwide network of resort properties. *See* Motion at 6.[5] However, as noted above, the plaintiffs dispute that Festiva's treatment of sales representatives differed materially from that of Rangeley. Moreover, Festiva employed at least two Rangeley sales representatives, Keller and Ying, following the sale, and Keller and Ying believe that other Rangeley sales representatives continued on with Festiva, as well. *See* Keller Decl. ¶¶ 3-4; Ying Decl. ¶¶ 3-4. If the plaintiffs are correct, there will be a core of common facts with respect to both Rangeley's and Festiva's treatment of sales

---

*Litig.,* 134 F.R.D. 4, 10 n. 5 (D. Me. 1991) (court generally will not address an argument advanced for the first time in a reply memorandum). In any event, even if appropriately taken into consideration, the point is not dispositive on the overall showing made.

[5] Rangeley does not appear to contest that there are questions of law or fact common to both defendants. *See* Motion at 4-6. In any event, there clearly are: for example, whether both Rangeley and Festiva misclassified sales representatives as independent contractors and failed to pay mandated overtime pay and/or minimum wages in violation of pertinent federal and state laws. *See, e.g.*, Third Amended Complaint ¶¶ 1-4, 27, 32.

representatives. In addition, Keller, Ying, and any other individuals who worked for both entities would be in a position to testify as to the practices of both.

### B. Prejudice

Rangeley argues that, given that it had only 170 or so former sales representatives operating out of one office, requiring it to litigate this matter with Festiva, which has a nationwide operation and hundreds of sales representatives, would work a serious hardship to it and be highly prejudicial. *See* Motion at 6. It asserts that the claims of most of the plaintiffs will be in regard to Festiva and that it is in an inferior position financially to litigate a massive class action lawsuit in which most of the evidence will have no bearing on the separate claims that former sales representatives may have against it. *See id*. It maintains that a jury necessarily would be confused by the joining of itself and Festiva as defendants, posing a serious and real danger of irreparable harm to it and its ability to have a fair trial. *See* Reply at 6. It concludes that fairness and judicial economy dictate that the claims brought against it by its former sales representatives be tried separately from those brought against Festiva. *See* Motion at 6; Reply at 6-7.

Rangeley offers no evidence of the asserted financial hardship resulting from its joinder in this litigation. Nor is such a hardship otherwise apparent in its conduct of the case thus far. It removed the case to this court and has continued to participate actively in the litigation, for instance, filing a separate motion to dismiss, a separate opposition to the plaintiffs' motion to remand, and now the instant motion to sever. Festiva represents, and Rangeley does not deny, that it did not respond to an invitation to participate in mediation with Festiva and the plaintiffs. *See* Festiva's Opposition at 6; *see generally* Reply. Nor is it apparent at this stage of the proceedings, when the plaintiffs' proposed Collective and Maine classes have yet to be approved

15

and their size and precise contours are as yet unknown, that Rangeley necessarily would be prejudiced by its joinder as a defendant in such classes or that jury instructions would be inadequate to prevent juror confusion and any resultant prejudice to Rangeley. For these reasons, Rangeley falls short of demonstrating prejudice sufficient to warrant its severance from the case.

While this finding in itself suffices to deny Rangeley's motion insofar as it is based on asserted prejudice, another factor weighs against its grant. Both the plaintiffs and Festiva raise facially plausible concerns that severing Rangeley would prejudice *them*. See Plaintiffs' Opposition at 1, 7-8; Festiva's Opposition at 4. The plaintiffs fear additional delay, on the heels of delays attributable to motion practice, as well as the inefficiency and burden of requiring individuals who worked for both Rangeley and Festiva to testify at separate trials. *See* Plaintiffs' Opposition at 7-8. Festiva fears that, given the plaintiffs' indication that they intend to hold Festiva liable for conduct by Rangeley, Festiva would be obliged to participate in separate litigation against Rangeley, entailing duplication of evidence, testimony, and costs. *See* Festiva's Opposition at 4. This plausible showing of prejudice likely to result from severance separately counsels against the grant of Rangeley's motion. *See Commonwealth Land Title Ins. Co. v. IDC Props., Inc.*, 482 F. Supp.2d 203, 206 (D.R.I. 2007) ("In deciding whether to sever claims and try them separately, a court should consider a number of factors, including: (1) whether separate trials will help to simplify the issues and avoid confusion; (2) whether separate trials will result in duplication of evidence; (3) whether separate trials will create a risk of inconsistent verdicts; (4) whether separate trials will result in an efficient use of judicial resources; (5) whether separate trials will expedite or delay the proceedings; and (6) the effect on the parties' rights to a jury trial.").

## IV. Conclusion

For the foregoing reasons, Rangeley's motion seeking to be severed from the instant action is **DENIED** on the showing made.

***SO ORDERED***.

Dated this 29th day of July, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge