UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ALISON MCCORMICK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FESTIVA DEVELOPMENT GROUP, LLC, | ) | Case No. 2:09-cv-00365-GZS |
| | ) | |
| and | ) | |
| | ) | |
| RANGELEY LAKE RESORT | ) | |
| DEVELOPMENT COMPANY, LLC, AND | ) | |
| PERRY WILLIAMS, individually | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**JOINT MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Alison McCormick, Sean Foley, Tamra Philbrook, J. Ham Ying, Courtney

Cooney, Scott Robinson, Keith Wegener, Dennis Pelczynski, Deborah Strout, Daniel Tucker,

Morgan Fineberg, and Matthew Byron, ("Plaintiffs"), and Defendant Festiva Development

Group, LLC ("Festiva" or "Defendant") (collectively referred to herein as the "Parties") hereby

move the Court for final approval of the class and collective action settlement ("Settlement") set

forth in Settlement Agreement, Release, and Waiver ("Settlement Agreement").  Specifically, the

Parties respectfully request that the Court enter the proposed Order, including provisions:

1) rendering final the certification of a state law class under Maine law pursuant to
   Rule 23 of the Federal Rules of Civil Procedure, for settlement purposes only, as
   described below, as well as the final certification of the previously conditionally
   certified collective class pursuant to Section 16(b) of the FLSA;

2) granting final approval of the proposed Settlement;

3) appointing as final Nichols Kaster, PLLP ("Plaintiffs' Counsel") as Class Counsel
   and Settlement Administrator;

4) entering a Judgment and Order of Dismissal with Prejudice.

1

The proposed settlement is fair, reasonable, and adequate and, as such, should be finally approved.   In support of their motion for final approval, the Parties submit the following incorporated memorandum.[1]

## I.  PROCEDURAL BACKGROUND

On June 26, 2009, Plaintiffs brought this collective and class action alleging that Defendant violated wage and hour laws, and, in effect, various other laws, by failing to appropriately compensate Sales Representatives in accordance with the FLSA and Maine wage and hour law, specifically under 26 M.R.S.A. §§ 664, 670 for minimum wage and overtime violations. Plaintiffs sought a collective action under Section 16(b) of the FLSA and a class action under Maine's wage act (ECF No. 3), and in August 2009, this case was removed to the United States District Court for the District of Maine.  (ECF No. 1.)

On January 24, 2011, this Court granted the parties' joint motion for preliminary approval finding, among other things, that the settlement is sufficiently within the range of reasonableness.  (ECF No. 143.)   Further, the Court conditionally 1) certified the Collective Class[2] and Rule 23 Class[3] ("Settlement Classes"), 2) found the named Plaintiffs adequate class representatives; 3) found Plaintiffs' Counsel adequate to serve as Class Counsel; and appointed Class Counsel as Settlement Administrator.  (Id. at 2-3.)  The Court also approved the form of the parties' proposed Notices of Settlement and Claim forms, as well as the manner of sending such Notices.  (Id. at 3.)

---

[1] Contemporaneously with this Memorandum, Plaintiffs' Counsel has filed a separate application for attorneys' fees, costs, and a single bonus payment.
[2] The Collective Class is defined as "All persons who filed a consent to join form in McCormick et al. v. Festiva Development Group, LLC et al., No. 2:09-cv-00365-GZS (D. Me. 2009), as of November 10, 2010."
[3] The Rule 23 Class is defined as "All persons who are performing or have performed work for Defendant Festiva in the state of Maine as a Sales Representative and who were paid by Festiva in whole or in part on a commission basis through November 10, 2010."

The Parties hereby incorporate by reference the "Procedural History and Background of Settlement Negotiations" set forth in their joint motion for preliminary approval (ECF No. 142 at 6-11) and provide below a detailed account of case activity that followed this Court's January 24th Order.

## A.     Notice of Settlement and Claim Forms

Pursuant to the Settlement Agreement, Plaintiffs' Counsel (or "Class Counsel") performed a preliminary allocation of the distribution amounts for the Rule 23 Class Members for Festiva's approval. (Desai Decl. at ¶ 2.)  Upon approval by Festiva and consistent with the Court's order granting preliminary approval, on February 7, 2011 Plaintiffs' Counsel sent the Court-approved Notice of Settlement and Claim Form ("settlement packet") to each member of the Rule 23 Class at such individuals' last known address by First Class U.S. mail.  (Id.)  For the three returned settlement packets, Plaintiffs' Counsel performed a search in an online public records database to determine any possible alternate address and mailed to such address.  (Id.) The re-mailed settlement packets were not returned.  (Id.)  Rule 23 Class members were given a 45-day notice period by which to return their Claim Forms. In order to maximize class participation, and with the consent of Festiva's counsel, Plaintiffs' Counsel attempted to reach each Rule 23 Class member who had not returned their claim form at approximately midpoint of the 45-day claims period by telephone to remind him or her of the deadline to participate in the settlement. (Id.)  Nineteen out of 47 Rule 23 Class members returned their Claim Forms within the requisite time frame.  (Id.)

Consistent with the Settlement Agreement, after the 45-day claim form deadline Plaintiffs' Counsel conducted a final allocation of settlement amounts for all class members.

Plaintiffs' Counsel provided the allocations to Festiva for approval.[4]  (Id. at ¶ 3.)  After the parties analyzed and agreed upon the allocations, Plaintiffs' Counsel, consistent with the Court's order granting preliminary approval, sent on April 18, 2011 the Court-approved settlement packet to each member of the Collective Class at such individuals' last known address by First Class U.S. mail.[5]  (Id.)  For the seven returned settlement packets, Plaintiffs' Counsel attempted to reach each individual by telephone, otherwise performed a search in an online public records database to determine any possible alternate address and mailed to such address.  (Id.)  Plaintiffs' Counsel was able to find alternate addresses for six of the seven individuals with returned notices.  The six re-mailed settlement packets were not returned.  (Id.)  For the last individual, Russell Mall, Plaintiffs' Counsel's online public records database search provided the same address that was in Plaintiffs' Counsel's file.  Plaintiffs' Counsel left two messages on Mr. Mall's voicemail, and in the third attempt to call Mr. Mall, his telephone was disconnected.  As a last resort, Plaintiffs' Counsel attempted to contact a "Russ Mall" on Facebook.  (Id.)

Consistent with the Settlement Agreement, Collective Class members were given a 45-day notice period by which to return their Claim Forms. (Id. at ¶ 4.)  Plaintiffs' Counsel has diligently worked to contact those individuals who did not submit a Claim Form by contacting them via telephone, mail and e-mail.  (Id.)  In total, 189 out of 203 Collective Class members

---

[4] With respect to the settlement payments to four Rule 23 class members, their original settlement allocation amounts were derived from incorrect employment dates and this incorrect number was sent to them with their Notices of Settlement. The Parties rectified this error after the four individuals accepted their settlement amounts, but the allocations of those four individuals went down based on their correct employment dates. Accordingly, the amounts being paid to these four individuals will be the amounts indicated in their original settlement offer. The difference between what these four individuals were originally offered (and what they will receive) and their allocation based on their correct employment dates will be paid from the contingency fund and unclaimed funds, and the combined total of this amount is approximately $5,834.

[5] With respect to the mailing of the FLSA collective action class settlement packets, four FLSA collective action members were inadvertently omitted from the original April 18, 2011 mailing and from the allocation. These four FLSA class members were sent notice on May 26, 2011 as soon as the issue was discovered, and all four subsequently returned their signed claim forms and are participating in the settlement. Further, one former FLSA collective action member withdrew from the lawsuit in October 2010 but was inadvertently sent notice of the settlement. The former collective action member was notified of the mistake and understands he is not part of the lawsuit or the settlement.

returned their Claim Forms within the requisite time frame.  No one has rejected or objected to the settlement.  (Id. at ¶ 5.)

### B. Settlement Distribution

Under the Settlement Agreement, Defendant agrees to pay a total sum not to exceed five hundred thousand dollars ($500,000) ("Total Settlement Amount") in order to fully and finally resolve the claims at issue in this litigation in their entirety. (ECF No. 142-2, Settlement Agreement at § 5(a).)  The Total Settlement Amount is inclusive of Plaintiffs' Counsel's fees and costs; interest; litigation costs; back wages; and liquidated/statutory damages.   Under the Settlement Agreement, the amount for distribution to the Settlement Classes (the "Net Settlement Amount") is the Total Settlement Amount of $500,000 less the following:  (1) attorneys' fees in the amount of $166,666; anticipated costs of $20,000 incurred throughout the litigation, including costs to administer the settlement[6]; (3) the single service payment of one thousand dollars ($1,000) to class member Athena Keller; and (4) a contingency fund of five thousand dollars ($5,000) to be administered by Plaintiffs' Counsel for use in addressing any late or disputed claims by class members or unanticipated costs of concluding this settlement (the "Contingency Fund").  The Net Settlement Amount results in approximately $307,334.

Each claimant's payment varied proportionately, based upon the ratio of (1) the number of weeks each class member who has timely returned a valid Claim Form and signed the applicable release ("eligible claimant") worked as a Sales Representative during the statutory period to (2) the total number of weeks all eligible claimants worked as Sales Representatives during the statutory period.  For eligible claimants who have specified to Plaintiffs' Counsel over

---

[6] In an effort to maximize the net distribution fund to be paid to class members, and as approved by the Court in its order granting preliminary approval, the settlement was administered by Plaintiffs' counsel.  Any unused portion of the anticipated $20,000 in costs will be donated to Pisgah Legal Services, the designated cy pres beneficiary.  (ECF No. 142-2, Settlement Agreement at ¶ 14.)

the course of the litigation that they believe they had a claim for unpaid overtime compensation, Plaintiffs' Counsel added an additional 30% of each individual's final distribution allocation to their payment in recognition of their overtime claims.[7]

### C. Payments to Class Members

Following the Effective Date, as defined in the Settlement Agreement at ¶ 2(a)(ii), Festiva will issue two checks through its payroll system to each eligible claimant. (ECF No. 142-2, Settlement Agreement at ¶ 13(a).) The first check will constitute one-half (50%) of the settlement payment and will be reported as wages for tax purposes with each eligible claimant receiving an IRS Form W-2 for this portion of the settlement payment. In addition, Festiva shall withhold from payments to eligible claimants taxes and other sums the Claimant is required to pay by state or federal law. Festiva shall pay the employer portion of the payroll taxes. The second check will cover the remaining half (50%) of the settlement payment and shall constitute payment for non-wage income, including but not limited to liquidated damages, and will be reported on an IRS Form 1099. (Id.)

The checks issued will expire one hundred and twenty (120) days after they are issued, but a failure by any eligible claimant to deposit or cash a check within the time period allotted shall have no effect on that individual's release of claims as set forth below. (Id. at ¶ 13(b).)

### D. Release of Claims

In consideration for the settlement payment from Defendant, each eligible claimant releases fully, forever, irrevocably, and unconditionally release, remise, and discharge Defendant, its successors, assigns, parents, subsidiaries, affiliates, officers, and employees, each in their individual and corporate capacities (collectively referred to as the "Released Parties"),

---

[7] The Parties have also agreed to pay a minimum allocation of $250 to each eligible claimant.

from any and all claims that were asserted or could have been asserted in this action under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. based on any events that occurred or are alleged to have occurred through November 10, 2010, or under the Maine General Laws, specifically 26 M.R.S.A. §§ 664, 670 in the above-captioned case, if applicable to the eligible claimant, based on any events that occurred or are alleged to have occurred through November 10, 2010 involving alleged violations of wage and hour matters.

## II.     LEGAL ARGUMENT

### A.     The Court Should Grant the Parties' Motion for Final Approval

The standard for approval of any class action settlement is whether the proposed settlement is "fair, reasonable and adequate." See Bennett v. Roark Capital Group, Inc., 2:09-CV-00421-GZS, 2011 WL 1627939, at *2 (D. Me. Apr. 27, 2011).  "[T]here is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement."   In re Relafen Antitrust Litig., 231 F.R.D. 52, 71-72 (D. Mass. 2005) (internal quotations omitted).  As a result, courts in the First Circuit rely on a number of factors, the most common of which include:  (1) the complexity, expense, and duration of litigation, if the agreement is denied; (2) the amount of the proposed settlement compared to the amount at issue; (3) reaction of the class to the settlement; (4) the stage of proceedings and the amount of discovery completed; (5) the plaintiffs' likelihood of success on the merits and recovering damages on their claims; (6) whether the agreement provides benefits which the plaintiffs could not achieve through protracted litigation; (7) good faith dealings and the absence of collusion; (8) the settlement's terms and conditions.  See, e.g., Rolland v. Patrick, 562 F. Supp. 2d 176 (D. Mass. 2008); In re Relafen Antitrust Litig., 231 F.R.D. at 72; In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 93 (D. Mass. 2005); M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819, 822-833 (D. Mass. 1987).

An examination of each of the factors demonstrates that this settlement is fair, reasonable, and adequate to the Class Members.

### 1.  The complexity, expense, and duration of litigation.

Considering the intricacies of this Rule 23 class and FLSA collective action, it is clear that the prosecution of this case would be lengthy and expensive.  If this Settlement is not approved, the Parties face an extended and costly battle, first in extensive discovery, then on Rule 23 class certification, decertification of the conditionally certified FLSA collective action, and summary judgment on the merits of whether the Sales Representatives were properly compensated.[8]  If motions on summary judgment are denied, the Parties would have to conduct expensive expert discovery and prepare for a trial that would likely be a lengthy and costly class action trial.  Further, if this case does not settle, it would likely take years and result in the expenditure of substantial legal fees before reaching final resolution, including exhaustion of all appeals.

### 2.  Amount of the proposed settlement compared to the amount at issue

The Parties agree that the value of the settlement is fair and reasonable given the various challenges facing Plaintiffs, including the risk of decertification and a determination of whether Plaintiffs were exempt under the FLSA and Maine law. (See Desai Decl. at ¶ 6.)  Further, there was a possibility that Plaintiffs and the putative class could recover nothing if this litigation were to proceed.  Under the settlement agreement, the average amount of recovery was approximately

---

[8]  Litigating Plaintiffs' claims would require substantial additional preparation and discovery.  It ultimately would involve the deposition and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and the preparation and analysis of expert reports and oppositions to such reports.  In addition, because Defendant denies that any violations of law have occurred or are occurring and given the state of the law, Defendant would possibly appeal any adverse ruling on the validity of its pay practices with respect to Sales Representatives.  In contrast, the Settlement Agreement will yield a prompt, certain, and very substantial recovery for the class.  Such a result will benefit the Parties and the court system.

$1,486, ranging from $250 to over $10,000.[9]  (See Ex. A.)  As such, the Parties agree that this settlement amount is entirely appropriate and very favorable to the Plaintiffs and the class they purport to represent.  See In re Lupron Mktg. & Sales Practices Litig., 345 F. Supp. 2d 135, 138 (D. Mass 2004) (finding the proposed settlement warranted preliminary approval because, inter alia, "the proposed settlement amount is sufficiently within the range of reasonableness").

### 3.      Reaction of the Class

No class member opted-out of or objected to the settlement, weighing in favor of final approval of the settlement.  Moreover, two Plaintiffs submitted declarations expressing their approval and satisfaction with the proposed Settlement Agreement.  (See Declarations of Plaintiffs Keller and McCormick.)

### 4.      Stage of proceedings and the amount of discovery completed

Plaintiffs' Counsel conducted a thorough investigation of the claims asserted as well as the recoverable damages, thus allowing them to assess the fairness of the Settlement.  Likewise, Defendant conducted an extensive internal review in order to assess potential exposure.  Also, while the Parties are in a relatively early stage in the case, they exchanged documents and information to allow the Parties to appropriately evaluate the merits of Plaintiffs' claims, including damages.  The Parties submitted briefs to the mediator setting forth the facts and relevant legal analysis in the case, exchanged these briefs with each other, and discussed numerous points as to the strengths and weaknesses of each side's position.  The forthright nature of the mediation process, as well as the views of an experienced mediator, focused the legal and factual issues for the Parties.  As such, this Settlement will resolve the legal risks which the Parties fully appreciate at this point in the litigation.

---

[9] The wide range of settlement payments is attributed to the amount of time each Plaintiff worked for Festiva as a Sales Representative.

     5.      **Plaintiffs' likelihood of success on the merits and recovering damages on their claims**

While Plaintiffs' case is meritorious, Plaintiffs recognize that maintaining a nationwide class of all Sales Representatives could have been challenging given the varying Festiva locations and potentially different methods of operation. Further, as a factual matter, proving "willfulness" in order to recover a third year worth of damages under the FLSA is a challenging burden in wage and hour cases, which Plaintiffs recognize. Plaintiffs understand that there are substantial risks as well as time-consuming, fact-intensive, and burdensome work that need to be undertaken to make these showings. In addition, Plaintiffs recognize that obtaining class certification and surviving partial or complete summary judgment or a motion to decertify a collective class could also have presented significant hurdles.

     6.      **The Settlement Agreement provides benefits which the plaintiffs could not achieve through protracted litigation**

The Settlement provides the benefit of a prompt and fair resolution to all claims in the Complaint. If the case had not settled, the Parties would have engaged in perhaps another two or three years of litigation to fully adjudicate Plaintiffs' claims, with the risk of class members receiving no recovery. Further, the Settlement avoids delay of the class members receiving their portion of the settlement amount.

     7.      **The Settlement was reached as the result of good faith dealings and the absence of collusion**

Both Plaintiffs and Defendant are represented by highly experienced and competent counsel recognized as national experts in class action wage and hour litigation, who have litigated wage and hour cases aggressively and successfully on behalf of their respective clients. Plaintiffs' Counsel has also obtained other significant court approved settlements of class action wage and hour cases, including on behalf of commissioned sales representatives. (See ECF No.

142-1. Morgan Decl. at ¶¶ 10-12.)  Likewise, Defendant's lead counsel is among the country's leading experts on wage and hour law, including regarding the compensability of work time and exempt status. The experience and reputation of counsel is paramount.  See, e.g., Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977); In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 410 F.Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); Fisher Brothers v. Phelps Dodge Industries, Inc., 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

Further, not only was the Settlement Agreement the result of protracted, good faith, arm's-length negotiations between experienced and informed counsel on both sides, but the Settlement Agreement and its material terms were negotiated with the assistance of an experienced mediator well-versed in the nuances of wage and hour class actions.  The Settlement was therefore not the product of collusive dealings, but, rather, was informed by the vigorous prosecution and defense of the case by the experienced and qualified counsel.

### 8.    The Settlement terms are fair and reasonable

The $500,000 settlement is a substantial result for the Class Members and will result in a meaningful payment to each eligible claimant.  Significantly, to ensure a fair distribution of the settlement amount, the settlement payments the class members will receive are determined based upon the ratio of (1) the number of weeks each eligible claimant worked as a Sales Representative during the statutory period to (2) the total number of weeks all eligible claimants worked as Sales Representatives during the statutory period.  In addition, for eligible claimants who have specified to Plaintiffs' Counsel that they believe they had a claim for unpaid overtime compensation, an additional 30% of each individual's final distribution allocation was added to their payment. This result is well within the reasonable standard.

Further, in consideration for the settlement payments, eligible claimants release Defendant from their claims under the FLSA and, if applicable, the overtime and minimum statutes under Maine Law. The release is not overly broad and is narrowly crafted to apply to the laws and facts alleged.

Accordingly, the standards for preliminary approval of the Settlement are met in this case and the Court should grant the present motion.

**B.     Final Certification of the Settlement Classes is Appropriate[10]**

Pursuant to the Settlement Agreement, and in accordance with the model of other similar wage and hour cases that counsel have settled in the federal courts, the Parties have stipulated to the following two classes for settlement purposes:

a.  **COLLECTIVE CLASS**[11] – All persons who filed a consent to join form in McCormick et al. v. Festiva Development Group, LLC et al., No. 2:09-cv-00365-GZS (D. Me. 2009), as of November 10, 2010; and

b.  **RULE 23 CLASS –** All persons who are performing or have performed work for Defendant Festiva in the state of Maine as a Sales Representative and who were paid by Festiva in whole or in part on a commission basis through November 10, 2010.

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. See, e.g., Amchem Prods., Inc. v. Windsor, 521 U.S. at 591 (1997); In re Lupron Marketing and Sales Practices Litigation, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (citing MANUAL FOURTH); see also Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998).

---

[10]   The Parties made their arguments supporting certification for settlement purposes in the Joint Motion for Preliminary Approval. (See ECF No. 142 at 19-27.) For the convenience of the Court, the Parties include the same arguments here.

[11] The Court granted the Parties' request for conditional certification of the FLSA collective action for the purposes of mediation. (ECF No. 91.) As such, it is the Parties' understanding that the Collective Class has already been certified, but in an abundance of caution, the Parties again raise the issue for the Court and request the Court's confirmation for final certification.

Specifically, the First Circuit has established that where there is a "common disputed issue," courts should "view the issue . . . in favor of class action status."  Tardiff v. Knox County, 365 F.3d 1, 5 (1st Cir. 2004); see also In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F.3d 6, 23 (1st Cir. 2008) (noting "existence of a common disputed issue weighs in favor of class certification, not against it).  This is also the case in other circuits.  See, e.g., Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir. 1985) ("[t]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action").  Here, as set forth below, all the elements of Section 16(b) of the FLSA and Rule 23 are met with respect to the proposed settlement, which, accordingly, merits collective class and Rule 23 class certification.

## 1.    The Elements of Rule 23(a) are Satisfied in the Present Case[12]

For a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative

---

[12]   As noted above, conditional certification has already been approved by the Court in this case.  (ECF No. 91.) The Parties further note that the prerequisites for a conditional certification of a FLSA collective action class are recognized to be more lenient than those under Rule 23 of the Federal Rules of Civil Procedure.  See, e.g., Poreda v. Boise Cascade, L.L.C., 532 F. Supp. 2d 234, 239 (D. Mass. 2008) (explaining that conditional certification is regularly determined under a "fairly lenient" standard which "typically results in conditional certification of the representative class") (citing to Trezvant v. Fidelity Employer Servs. Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006)); see also Baas v. Dollar Tree Stores, Inc., No. C 07-03108 JSW2009, 2009 WL 1765759, at *5 (N.D. Cal. June 18, 2009) (recognizing that "the standard to grant conditional certification of a collective action under the FLSA is more lenient than the standard to certify a class pursuant to Rule 23 [but noting that] Plaintiffs must still demonstrate that they are 'similarly situated' to the other members of the proposed collective action"); Burk v. Contemporary Home Services, Inc., No. C06-1459RSM, 2007 WL 2220279, at *3 (W.D. Wash. Aug. 1, 2007) (recognizing that the FLSA "sets a more lenient standard for conditional certification of a representative class than does Rule 23 of the Federal Rules of Civil Procedure [and noting that c]ollective actions are not subject to the numerosity, commonality, and typicality rules of a class action suit under Rule 23")  For these two reasons, this memorandum will not specifically address the standards for certifying the settlement collective action class inasmuch as it would follow a fortiori from meeting the Rule 23 prerequisites.

parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R CIV. P. 23(a). See, e.g., Key v. Gillette Co., 782 F.2d 5, 7 (1st Cir. 1986) ("all four requirements of Rule 23(a) must be met in order for certification of a class to be proper"); Barnes v. American Tobacco Co., 161 F.3d 127 (3d Cir. 1998); In re: Prudential Ins. of Am. Sales Practices Litig., 148 F.3d 308-09 (3rd Cir. 1998). Here, all four elements are easily satisfied.

### 2.      Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Plaintiff is not required to come before the Court and detail, to the person, the exact size of the class or to demonstrate that joinder of all class members is impossible. "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." Advertising Special. Nat. Ass'n v. Federal Trade Comm'n, 238 F.2d 108, 119 (1st Cir. 1956) (citing 3 MOORE'S FEDERAL PRACTICE 3423 (2d ed. 1948).; see also Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.RD. 65, 73 (D.N.J. 1993) (stating that "[i]mpracticability does not mean impossibility" and "precise enumeration of the members of a class is not necessary"). Numerosity is indisputable here as there are approximately fifty-eight (58) Rule 23 class members comprising the Maine Rule 23 class.[13] Thus, numerosity is met.

### 3.      Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality requirement is met if the plaintiff's grievances demonstrate "that there are common questions of law or fact in the case." So. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 87 (D. Mass. 2007) (characterizing commonality

---

[13]  The 58 Rule 23 class members include the FLSA collective class members who are part of the Rule 23 class.

14

requirement as a "low hurdle" that "can be met by even a single common legal or factual issue").[14]  By way of background, in general, Festiva's Sales Representatives' job duties include, but are not limited to the following: meet guests who are prospective Festiva members, discuss Festiva membership options, provide either virtual or in person tours of vacation units, explain the benefits of having a Festiva membership and potentially sell the membership.

Here, commonality is met insofar as the claims of the class representatives and the members of the Rule 23 Class are all predicated on the core common issue as to whether the Defendant failed to classify them correctly and compensate them for all compensable time worked.  Specifically, the common core issues include, but are not limited to:  (a) whether Sales Representatives were properly classified as exempt employees; (b) whether Defendant failed to maintain accurate time records; and (c) whether Defendant's violations are found to be willful. See In re Light Cigarettes Mktg. Sales Practices Litig., No. 1:09-md-02068-JAW, 2010 WL 4901785, at *13 (D. Me. Nov. 24, 2010); see also Kirby v. Cullinet Software, Inc., 116 F.R.D. 303, 306 (D. Mass. 1987); Ford v. Townsends of Ark., Inc., No. 4:08cv00509 BSM, 2010 WL 1433455, at *7-9 (E.D. Ark. Apr. 9, 2010); Morales v. Greater Omaha Packing Co., Inc., No. 8:08CV88, 2010 WL 1049277, at *7-8 (D. Neb. Mar. 17, 2010); Prasker v. Asia Five Eight LLC, No. 08 Civ. 5811(MGC), 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010).

---

[14]  Rather than requiring that all questions of law or fact be common, Rule 23 only requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3).  Plaintiff is not required to show that all class members' claims are identical to each other as long as there are common questions at the heart of the case; "despite some factual differences between the members of the class, commonality can still exist for purposes of 23(a)(2)."  In re Dehon, Inc., 298 B.R. 206, 214 (Bankr. D. Mass. 2003) (holding that because one "can reasonably infer that certain defenses of the individual members of the putative class to Dehon's subordination strategy will be available to every other member . . . . commonality is established").  Indeed, only a single common question is sufficient to satisfy the requirements of Rule 23(a)(2).  See, e.g., 1 Robert Newberg, NEWBERG ON CLASS ACTIONS, § 3.10; accord So. States Police Benevolent Ass'n, 241 F.R.D. at 87.  "The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a *single issue common* to all members of the class. Therefore, this requirement is easily met in most cases."  Natchitoches Parish Hosp. Servs. Dist. v. Tyco Int'l., Ltd., 247 F.R.D. 253, 264 (D. Mass. 2008) (quoting 1 Newberg, NEWBERG ON CLASS ACTIONS, § 3.10) (emphasis added).

This is the paradigm, particularly in a settlement context, of a common issue sufficient to meet the 23(a)(2) standard.

### 4.     Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiffs' claims be "typical" of those of other class members.[15]  The typicality requirement is satisfied when the class members' claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory."  Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (quoting In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996); see also Marisol A. v. Giuliani, 126 F.3d 372 (2d Cir. 1997) (typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability").  Notably, a "finding of typicality will generally not be precluded even if there are 'pronounced factual differences' where there is a strong similarity of legal theories."  In re Carbon Black Antitrust Litig., No. Civ.A.03-10191-DPW, 2005 WL 102966, *12 (D. Mass. Jan. 18, 2005) (quoting In re Linerboard Antitrust Litig., 203 F.R.D. 197, 207 (E.D. Pa. 2001)); see also Hayworth v. Blondery Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory.").[16]

---

[15] The commonality and typicality requirements of Rule 23(a) "tend to merge."  Gen.Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n. l3 (1982).  The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative.  See, e.g., id.; In re Screws Antitrust Litigation, 91 F.R.D. 52, 56 (D. Mass. 1981) (highlighting requirement that class interests be adequately protected); Prudential II, 148 F.3d at 311; Bogosian v. Gulf Oil Corp., 561 F.2d 434 (3d Cir. 1977); Asbestos School Litig., 104 F.R.D. at 429-30.

[16]  In other words, "[t]he 'typicality' requirement focuses less on the relative strengths of the named and unnamed plaintiffs' case than on the similarity of the legal and remedial theories behind their claims."  In re Relafen Antitrust Litig., 231 F.R.D. 52, 69 (D. Mass 2005) (quoting Jenkins v. Raymark Indus., 782 F.2d 468, 472 (5th Cir. 1986)); Weiss v. York Hosp., 745 F.2d 786, 809-10 (3d Cir. 1984).

This requirement is also met by the Rule 23 Class which is based on the same claims. Thus, Plaintiffs' claims are "typical" with regard to the entire class. Further, this requirement is met by the proposed Rule 23 settlement class as Plaintiffs' claims allegedly all arise from a common course of conduct by Defendant in classifying them as exempt employees and failing to compensate Sales Representatives for all time worked. Thus, for the purpose of settlement, Plaintiffs contend that each class member's case at trial would be essentially the same (hence, commonality) and the named class representatives would, themselves put on that case (hence, their claims are typical).

### 5.      Adequacy Under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." In the First Circuit, "[t]he requirement of adequate representation is met [where] [1] the named plaintiffs' interests are not antagonistic with those of the rest of the class but rather involve the identical legal issue, and [2] the plaintiffs' attorneys are qualified to conduct the litigation." Bouchard v. Sec. of Health & Human Servs., No. Civ.A. 78-0632-F, 1982 WL 594675, at *7 (D. Mass. Jan. 11, 1982); see also Andrews v. Bechtel Power Co., 780 F.2d 124, 130 (1st Cir. 1985) (stating Rule 23(a)(4) requires "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation"). These two components are designed to ensure that absentee class members' interests are fully pursued.

Adequacy is easily met here. Class Counsel is experienced and competent in complex litigation and has an established track record in employment law, including, specifically, the litigation and settlement of wage and hour cases relating to Sales Representatives. (See ECF No. 142-1 at ¶ 10-12). In turn, the class representatives of the Rule 23 Class have no interests whatever antagonistic to the class and have demonstrated their allegiance to this litigation

through their patience and participation in the settlement process on behalf of all of these putative class members.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, the Parties now turn to consideration of the factors which, independently, justify certification of the Rule 23 Class under subdivision 23(b)(3) of the rule.

### 6.        The Requirements of Rule 23(b)(3) Are Met in the Settlement Context

Plaintiffs' proposed State Law Class also meets the requirements of Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R CIV. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues.  Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003) (noting "courts have usually certified Rule 23(b)(3) classes even though individual issues were present"); In re Sugar Ind. Antitrust Litig., 73 F.R.D. 322, 344 (E.D. Pa. 1976).

The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." Hochschuler v. G.D. Searle & Co., 82 F.R.D. 339 (N.D. Ill. 1978); see also In re TJX Cos. Retail Sec. Breach Litig., 246 F.R.D. 389, 398 (D. Mass. 2007) ("Need

for individualized damages decisions does not ordinarily defeat predominance requirement for class certification where there are disputed common issues as to liability."); Dietrich v. Bauer, 192 F.R.D. 119 (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class"). Rule 23(b)(3) does not require that all questions of law or fact be common. See, e.g., Smilow v. Southwestern Bell Mobile Sys.. Inc., 323 F.3d 33, 39 (1st Cir. 2003) (pointing out Rule 23(b)(3) "requires merely that common issues predominate"); In re Telectronics Pacing Sys., 172 F.R.D. 271, 287-88 (S.D. Ohio 1997).  In this regard, courts generally focus on the liability issues and whether these issues are common to the class.  If so, particularly in the settlement context, common questions are held to predominate over individual questions. See id.

Plaintiffs assert that common questions of law and fact predominate.  All of the claims of the members of the Rule 23 Class arise out of general compensation practices affecting the pay of Sales Representatives.  As a result, Plaintiffs allege that class members all suffered the same harms (*i.e.*, uncompensated work time).  Likewise, all class members' claims are subject to Maine and federal law.  Therefore, the Rule 23 Class presents common operative facts and common questions of law which predominate over any legal or factual variations in the application of the Defendant's compensation policies to certain Sales Representatives.

These common questions of law and fact, referred to above, suffice in this settlement class to present a predominance of common issues.

The Parties further stipulate for settlement purposes that superiority is likewise met in the settlement context because this settlement will resolve the pending lawsuit against Defendant in a single, consolidated proceeding – obviating the need for multiple, parallel lawsuits.  Further, given the commonality of claims relating to Defendant's compensation practices and the plethora

of complex legal issues relating to the claims raised in this litigation, there would be little or no interest for each class member to proceed with a "single plaintiff" case.

Accordingly, strictly for the purposes of settlement, the Parties agree that there is no danger that individual variations in damage suffered by individual class members will affect predominance, as the class representatives allege the same type of damages – and seeks the same type of relief – as all members of the proposed class.

Finally, resolution of the claims asserted in this litigation by class settlement is superior to the individual adjudication of class members' claims for compensatory relief.  In particular, the settlement provides class members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the allegedly injured parties will obtain necessary and timely relief at the conclusion of the litigation process.  Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in multiple trials, including trials in each of the lawsuits being settled herein.

Accordingly, strictly in the settlement posture in which the case now stands, the Rule 23 Class is appropriate and should be certified for settlement purposes.

## III.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court enter the Final Approval Order, which, grants the relief detailed herein.

Respectfully submitted this 6th day of June, 2011,


PLAINTIFFS,                                    FESTIVA DEVELOPMENT GROUP, INC.,

By and through their attorneys,               By and through its attorneys,

/s/ Reena I. Desai                            /s/ Mark A. Kearns
Matthew H. Morgan (*pro hac vice*)            Mark A. Kearns, Esq.
MN Bar No. 304657                             MARK A. KEARNS, ATTORNEY AT LAW
*morgan@nka.com*                              ME Bar No. 2485
Reena I. Desai (*pro hac vice*)               *mak@newlaws.com*
MN Bar No. 0388311                            482 Congress Street, Suite 304
*rdesai@nka.com*                              P.O. Box 17915
NICHOLS KASTER PLLP                           Portland, ME 04112
4600 IDS Center                               Phone: 888.639.5297
80 South 8th Street
Minneapolis, MN 55402                         /s/ Jonathan W. Yarbrough
Telephone:  612.256.3200                      Jonathan W. Yarbrough (*pro hac vice*)
                                              NC Bar No. 21316
/s/ Donald F. Fontaine                        *jyarbrough@constangy.com*
Donald F. Fontaine                            CONSTANGY, BROOKS & SMITH, LLP
ME Bar No. 424                                80 Peachtree Road, Suite 208
*dff@fontainelaw.com*                         Asheville, NC 28803
LAW OFFICE OF DONALD F. FONTAINE              Phone: 828.277.5137
97 India Street
P.O. Box 7590                                 /s/ Ellen C. Kearns
Portland, Maine 04112                         Ellen C. Kearns (*pro hac vice*)
Telephone:  207.879.1300                      BBO# 263100
                                              *ekearns@constangy.com*
                                              Christopher M. Pardo (*pro hac vice*)
                                              BBO# 674674
                                              *cpardo@constangy.com*
                                              CONSTANGY, BROOKS & SMITH, LLP
                                              535 Boylston Street, Suite 902
                                              Boston, Massachusetts 02116
                                              Phone: 617.849.7880

## CERTIFICATE OF SERVICE

I hereby certify that, on this 6th day of June, 2011, this document was filed with the Clerk of Court through the Court's electronic filing (ECF) system and that ECF will send electronic notice of the filing to the following:

Christopher M. Pardo
cpardo@constangy.com

Ellen C. Kearns
ekearns@constangy.com

Jonathan W. Yarbrough
jyarbrough@constangy.com

Mark A. Kearns
mak@constangy.com
Constangy, Brooks & Smith, LLP
75 Arlington Street
Suite 500
Boston, MA  02116
(617) 849-7884

David J. Perkins
dperkins@perkinsolson.com

Nathan Quinn Collins
qcollins@perkinsolson.com
Perkins Olson
30 Milk Street
PO Box 449
Portland, ME  04112-0449
(207) 871-7159

Dated: June 6, 2011

/s/Reena I. Desai
Reena I. Desai (*pro hac vice*)
MN Bar No. 0388311
IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200
Fax (612) 215-6870
rdesai@nka.com